DAMP, and another, Plaintiffs-Respondents, v. ZABEL, and another, Defendants-Respondents: FARMERS INSURANCE EXCHANGE, Defendant-Appellant.

Court of Appeals, District III

*No. 77–493. Argued August 29, 1978.—*
*Decided September 18, 1978.*
(Also reported in 270 N.W.2d 434.)

For the appellant there was a brief by *Everson, Whitney, Everson, Brehm & Pfankuch, S.C.,* of Green Bay, and oral argument by *James L. Everson.*

For the plaintiffs-respondents there was a brief by *Plier & Judge,* of Oconto, and oral argument by *James Plier.*

For the defendants-respondents there was oral argument by *Howard Eslien* of Oconto Falls.

BEFORE DEAN, P.J., DONLIN and FOLEY JJ.

DONLIN, J. Farmers Insurance Exchange (Farmers) appeals from an interlocutory judgment of the

circuit court for Oconto County finding coverage on four separate insurance policies, covering four different automobiles, issued by Farmers to various members of the family of Robert Zabel. The judgment finding coverage under a policy issued to Terry Zabel and two policies issued to Robert Zabel is reversed.

On January 15, 1972, a 1968 Camaro owned by James Zabel and driven by Terry Zabel with his brother's permission skidded out of control and overturned, causing injuries to the plaintiff, Robert Damp, a guest passenger in the car. At the time of the accident, Terry Zabel and the plaintiff, Robert Damp, were 17 years of age and were returning from their place of employment. Terry was driving his brother's Camaro because his car, a 1954 Ford, was inoperable due to mechanical problems. Both Terry Zabel and James Zabel resided in the household of their father, Robert Zabel.

Farmers issued four separate policies: one policy to Terry Zabel, the driver of the automobile involved in the accident, describing a 1954 Ford; one policy to James Zabel, the owner of automobile involved in the accident, describing said automobile, a 1968 Camaro; and two policies to Robert Zabel, Terry's father and the sponsor for Terry's operator's license under Sec. 343.15(2), Stats., describing a 1965 Buick and a 1972 Buick, respectively. Each of the four policies contained identical coverage provisions with respect to liability[1] and medi-

---

[1] "COVERAGES A and B/Liability Insurance

"To pay all damages the insured becomes legally obligated to pay because of: . . .

"DEFINITION OF INSURED . . .

"(a) with respect to the described automobile,

"(1) the named insured, and

"(2) any other person using such automobile, provided the actual use is with the permission of the named insured or an adult member of his household other than a chauffeur or domestic servant; and

cal expense.[2] Each of the policies had $50,000 single injury limits plus $2,000 in medical payments limits.

Farmers Insurance conceded $52,000 coverage on the policy issued to James Zabel which described the 1968 Camaro involved in the accident, but denied coverage on Robert's Zabel's two policies and Terry Zabel's single policy. The plaintiffs contended and the trial court found an additional $156,000 from the other three policies was available to make payment to the plaintiffs for damages or medical expenses they may have sustained or incurred as a result of Robert Damp's injuries. The plaintiffs concede, aside from the omnibus auto insurance statutes, no coverage was available under Terry Zabel's policy or

"(b) with respect to a non-owned automobile,

"(1) the named insured or a relative, and

"(2) any other person or organization not owning or hiring such automobile if legally responsible for its use by the named insured or a relative, but only in the event such named insured or relative is legally liable for the occurrence; provided the actual use of the non-owned automobile by the persons in (1) and (2) above is with the permission of the owner. . . ."

"ADDITIONAL DEFINITIONS

". . .

"*Described automobile* means the automobile described in the Declarations and includes a trailer owned by the named insured if designed for use with a private passenger automobile, a newly acquired automobile and/or a substitute automobile. . . .

"*Non-Owned Automobile* means an automobile not owned by or regularly or frequently used by the named insured or any resident of the same household, other than a substitute automobile.

"*Substitute Automobile* means an automobile not owned by the named insured or any resident of the same household, while temporarily used with the permission of the owner, as a substitute for the described automobile when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction."

[2] COVERAGES D and E/Medical Expense Insurance.

These coverages are substantially similar to those of liability coverage, *supra*, note 1. The definitions which restrict the scope of coverage are identical to those set forth above. See "Non-owned automobile" and "Substitute automobile," *supra*, note 1.

either of Robert Zabel's two policies, the 1968 Camaro not being "described" in the other three policies, and not being qualified under the definitions of nonowned or substitute automobile coverage since the Camaro was owned by James Zabel, a resident of the same household as Terry and Robert Zabel. The trial court's determination of coverage was based on the provisions of sec. 204.30(3), Stats. 1973. The question on appeal is whether sec. 204.30(3) or other provisions of the omnibus statutes provide coverage under either of the two policies issued to Robert Zabel, the father and sponsor of the minor driver, or under the policy issued to Terry Zabel, the driver.

## POLICIES OF ROBERT ZABEL

It is the contention of the plaintiffs that to deny coverage under Robert Zabel's policies would violate the public policies of the State of Wisconsin and the provisions of the omnibus statutes. It is contended that the policies provide coverage pursuant to sec. 343.15(2), the sponsorship statute, and sec. 204.30(3), the omnibus coverage statute. The decision of the Wisconsin Supreme Court in *Limpert v. Smith*,[3] being controlling, this argument fails.

In *Limpert*, a minor who resided in his sponsor-father's household was driving his own car at the time of an accident, and it was argued that the father's sponsorship liability was covered by the father's policy for another car, despite the definitions of a "drive other cars" provision designed to avoid multiple coverage under the father's policy as well as the son's policy. The court held that, apart from a definition that non-owned

---

[3] *Limpert v. Smith*, 56 Wis.2d 632, 203 N.W.2d 99 (1972). *Accord, McDonald v. Aetna Casualty & Surety Co.*, 47 Wis.2d 235, 177 N.W.2d 101 (1970).

auto coverage did not extend to autos owned by any resident of the same household, a provision for coverage of "any person . . . legally responsible for the use of an automobile . . . not owned by such person" would have extended coverage to the father's sponsorship liability. The court then read the insurance policy as a whole and specifically upheld the policy definition limiting "drive other cars" coverage to cars not owned or regularly or frequently operated by members of the named insured's household.

Furthermore, in reiterating its approval of the basic purpose of such "drive other car" provisions, the court described their purpose as to prevent a person from insuring all the cars in one household by taking out just one policy and paying only one premium.[4] Thus, in *Limpert* and *McDonald,* the court upheld unambiguous "drive other cars" provisions virtually identical to those here, and refused to allow an increase in liability coverage available to one car in a household, described in and covered under one policy, by rejecting a construction of a second policy, describing a second car in the same household, which would have provided additional coverage for an accident involving the first car despite unambiguous policy definitions in the second policy.

The policy definition limiting "drive other cars" coverage in the present case being indistinguishable from that in *Limpert,* and the purpose of such provisions having been approved by the Wisconsin Supreme Court, the present case is clearly governed by *Limpert.* That the minor here was driving an automobile owned by his brother, rather than his own car as in *Limpert* is not material to the result of this case. Likewise, since it is undisputed that the 1968 Camaro was owned by a member of Terry Zabel's household, it is immaterial

---

[4] *Limpert v. Smith, supra,* 56 Wis.2d at 640, citing *McDonald v. Aetna Casualty & Surety Co., supra.*

that there was evidence in the record that Terry Zabel did not regularly or frequently use his brother's Camaro and was using it at the time of the accident only because his car was inoperable.

Furthermore, that the plaintiffs here rely on language of the omnibus coverage statute, rather than the policy language as in *Limpert*, is of no consequence. Sec. 204.-30(3), Stats. 1973, sets forth mandatory minimum coverages[5] for policies issued or delivered in Wisconsin.[6] It is clear that "(S)uch automobile" refers to "any automobile described in this policy." The policies issued to Robert Zabel "describing" a 1965 Buick and 1972 Buick, respectively, the 1968 Camaro, was not described in either of Robert Zabel's policies, and thus was not within the mandatory minimum coverage required by the omnibus coverage statute.

The plaintiffs also contend that the limitation "drive other cars" coverage to automobiles other than those owned by members of the named insured's household is an "exclusion" from coverage, proscribed by sec. 204.-

---

[5] Text of Sec. 204.30(3), Stats. 1973, in part:

"(3) COVERAGE. . . . The indemnity provided by this policy is extended to apply, in the same manner and under the same provisions as it is applicable to the named assured, to any person while riding in or operating any *automobile described in this policy* when such automobile is being used for purposes and in the manner described in the policy. *Such indemnity shall also extend to any person legally responsible for the operation of such automobile.* . . ." (Emphasis supplied.)

[6] Where policy provisions conflict with the terms of the omnibus coverage statute, the terms of the statute control and are read into the policy. *See, e.g., Smith v. National Indemnity Co.*, 57 Wis.2d 706, 205 N.W.2d 365 (1973) and *Amidzich v. Charter Oak Fire Insurance*, 44 Wis.2d 45, 170 N.W.2d 813 (1969). In the present case, the same result obtains under Condition 1 of Farmers' policies: "Policy terms which conflict with Wisconsin statutes are amended to conform to such statutes."

34(2)[7] or 204.34(5),[8] Stats., 1973. A limitation of "drive other cars" coverage to automobiles not owned by members of the same household is clearly not an "exclusion" from coverage.[9]

Unlimited "drive other cars" coverage not being required by sec. 204.30(3) and not having been otherwise granted in Robert Zabel's policies, the limitation of such coverage by definition of policy's terms could not subtract anything from coverage previously granted by statute or in the policy. Because such definitional limits to coverage are not "exclusions," they are therefore not invalidated by operation of sec. 204.34(2) or 204.34(5), Stats. 1973. Moreover, the Wisconsin Supreme Court has construed the "exclusion" of relatives prohibited by sec. 204.34(2) as not applicable to provisions which extend coverage beyond that required by sec. 204.30(3), the omnibus coverage statute.[10]

## POLICY OF TERRY ZABEL

It is also the contention of the plaintiffs that to deny coverage under Terry Zabel's policy would violate the

---

[7] Sec. 204.34(2), Stats. 1973: "No policy . . . shall exclude from the coverage afforded . . . therein provided persons related by blood . . . to the assured."

[8] Sec. 204.34(5), Stats. 1973: "Every policy . . . shall afford coverage . . . (for) liability . . . (to) any person who is a passenger in . . . the insured vehicle, or it shall state prominently on its face in contrasting color that such coverage is not afforded." It is undisputed the definitions of the terms of coverage did not comply with the format described in 204.34(5).

[9] "Exclusion" is defined as "the state of being excluded," i.e., "expel(led) . . . from a place or position previously occupied." *Webster's New Collegiate Dictionary*, (1977) at 399.

[10] *Klatt v. Zera*, 11 Wis.2d 415, 105 N.W.2d 776, 781 (1960). *See also, Haines v. Mid-Century Insurance Co.*, 47 Wis.2d 442, 177 N.W.2d 328, 331 (1970) and *Smith v. National Indemnity Co.*, 57 Wis.2d 706, 205 N.W.2d 365, 368 (1973).

public policy of the State of Wisconsin and the omnibus statutes. The trial court determined that the definitions which limited "drive other cars" coverage to cars other than those owned by members of the same household violated the provisions of sec. 204.30(3), Stats. 1973, but on appeal the plaintiffs contend that the definitions violate sec. 204.34(4), 204.34(2) and 204.34(5), Stats. 1973,[11] and are therefore invalid. For reasons similar to those underlying our holding on Robert Zabel's policies, we find no violations of such omnibus provisions and hold that Terry Zabel's policy is not available to make any payments to which the plaintiffs may become entitled.

The plaintiffs concede that there is no coverage under the policy itself, and, properly do not contend that sec. 204.30(3) requires "drive other cars" coverage for the named insured. Thus, Terry Zabel's policy never afforded him coverage for use of a substitute automobile owned by members of his household, by statute or otherwise in the policy. Because limiting "drive other cars" coverage by defining the terms of such coverage were not "exclusions" from coverage, it follows that the secs. 204.34(4), 204.34(2), and 204.34(5) do not invalidate the definitions of "Non-owned automobile" or "Substitute automobile."

The plaintiffs cite a case involving a co-employee exclusion clause, as authority for their contentions with respect to sec. 204.34(4) and 204.34(5), Stats. 1973. Subsequently, the Wisconsin Supreme Court modified its

[11] Secs. 204.34(2) and (5), *supra,* notes 6 and 7. Sec. 204.34(4) "No policy . . . shall exclude from coverage afforded or provisions as to benefits therein, liability . . . sustained by any person who is a named insured."

analysis of these statutory provisions.[12] Neither case had occasion to consider the validity of unambiguous policy definitions purporting to deny coverage to a named insured under his own policy for liability arising from use of a car other than the one described in his policy. Nevertheless, in *Limpert* as here, the issue is whether insureds should be allowed to increase their liability coverage by rewriting unambiguous policy definitions to expose an insurer to a greater risk than it contemplated and for which it was not paid.[13] The present case, not involving a co-employee exclusion clause or even an "exclusion" clause at all, is clearly not controlled by the co-employee cases.

In light of our dispostion of the coverage issues as to Robert and Terry Zabel's policies, we need not reach the contentions of the parties with respect to the other insurance and excess coverage clauses of the insurance policies.

This case being governed by previous decisions as set forth above, the judgment of the trial court is reversed and the matter remanded so as to issue an order dismissing the complaint of the plaintiff as to the defendant Farmers Insurance Exchange on the policies which it issued to Terry Zabel and Robert Zabel.

*By the Court.*—Affirmed as to coverage under defendant Farmers Insurance Exchange's policy issued to James Zabel. Reversed as to coverage under defendant Farmers Insurance Exchange policies issued to Terry and Robert Zabel.

---

[12] *Davison v. Wilson*, 71 Wis.2d 630, 239 N.W.2d 38 (1975), modified in *Dahm v. Employers Mutual Liability Co.*, 74 Wis.2d 123, 246 N.W.2d 131 (1976).

[13] *Limpert, supra*, 56 Wis.2d at 640, *McDonald v. Aetna Casualty & Surety Co., supra*, 47 Wis.2d at 240, 241. *See also: Garriguenc v. Love*, 67 Wis.2d 130, 226 N.W.2d 414 (1975).