Donald L. SCHWOCHERT, Jr., Shane Schwochert, Jr., by his guardian, Donald L. Schwochert, Jr., and Donel Schwochert, by her guardian, Donald L. Schwochert, Jr., Plaintiffs-Appellants and Cross-Respondents,

v.

AMERICAN FAMILY MUTUAL INS. CO., Defendant-Respondent and Cross-Appellant,

Jeffrey J. LAUTH, John E. Lauth, Annetta N. Lauth, Columbia County, a Wisconsin municipal corporation, General Casualty Company, Wisconsin Board of Regents of the University of Wisconsin Systems, d/b/a Wisconsin Hospital & Clinics, Defendants.

Supreme Court

*No. 86–1538. Argued May 29, 1987.—Decided June 18, 1987.*

(Also reported in 407 N.W.2d 525.)

For the plaintiffs-appellants & cross-respondents (in the court of appeals), there were briefs by *Douglas W. Kammer* and *Douglas W. Kammer, S.C.,* Portage and oral argument by *Douglas W. Kammer.*

For the defendant-respondent & cross-appellant (in the court of appeals), there were briefs by *Clyde C.*

*Cross* and *Cross, Mercer & Maffei,* Baraboo, and oral argument by *Clyde C. Cross.*

Amicus curiae brief was filed by *Boyd M. McGranaghan, Wisconsin Academy of Trial Lawyers* and *Kmiec Law Office,* Milwaukee.

Amicus curiae brief was filed by *Carroll Metzner, Robert J. Kasieta, Wisconsin Insurance Alliance* and *Bell, Metzner & Gierhart, S.C.,* Madison.

STEINMETZ, J.   The parties brought a petition to bypass the court of appeals under sec. (Rule) 809.60(2), Stats., which we accepted.

This is an action for the wrongful death of Susan Schwochert by her surviving husband, Donald Schwochert, Jr., and their children, and for injuries to Donald Schwochert, Jr. These damages resulted from an accident on July 27, 1984, when Jeffrey Lauth negligently failed to stop at a stop sign and collided with Schwocherts' 1976 Chevrolet Monte Carlo. Jeffrey's negligence was stipulated to be the sole cause of the accident in exchange for a release of all the personal liability of Jeffrey or John Lauth, his father.

Jeffrey was driving a 1979 three-quarter ton Chevrolet four-wheel drive pickup truck at the time of the accident which belonged to his father. This vehicle was not listed on either Jeffrey's or John's auto insurance policies. Both father and son lived in the same household and were involved in the business of farming. The accident truck was used primarily for farm hauling within the boundaries of the Lauth farm.

Jeffrey personally owned a 1977 Chevrolet pickup truck that was disabled at the time of the accident. At the time of the accident, Jeffrey was on the way to a friend's farm to repair his own disabled pickup truck.

He was transferring tools to the friend's farm for that purpose. The disabled pickup was specifically listed on an American Family Mutual Ins. Co. (American Family) auto policy issued solely to Jeffrey with Jeffrey as named insured. John Lauth, the owner of the accident pickup, had at least two other vehicles, a station wagon and a Dodge Aspen, that were insured on liability policies with American Family.

Donald and Susan Schwochert owned two vehicles at the time of the accident, a 1976 Chevrolet Monte Carlo, which was involved in the accident, and a 1974 Chevrolet pickup truck, which was not involved in the accident. Both Schwochert vehicles were insured by American Family under separate policies; the policy on the 1976 Monte Carlo, the accident vehicle, was issued with Susan Schwochert as the named insured, and the policy on the 1974 pickup truck listed both Donald and Susan Schwochert as named insureds. Both Schwochert policies provided liability, medical pay, collision and uninsured motorist coverage, but only the policy on the 1974 truck, which was not involved in the accident, provided underinsured motorist coverage.

Prior to trial, the Schwocherts' counsel filed a motion for summary judgment arguing that Jeffrey Lauth was uninsured as a matter of law. Counsel for American Family defending against the Schwocherts' claims for uninsured and underinsured coverage, made an oral motion for summary judgment just prior to trial urging the court to rule that Jeffrey was insured as a matter of law. The trial court found Jeffrey was insured as a matter of law and that American Family could waive its policy defenses to

extend liability coverage.[1] The trial court further concluded that because Jeffrey was insured, the uninsured motorist coverage was not involved. However, the trial court allowed the underinsured motorist coverage limits to be tapped from the Schwocherts' policy on the 1974 truck.

The issues raised, according to the plaintiffs, are:

(1) Under the facts of this case, was Jeffrey Lauth an insured driver as a matter of law? The trial court answered this question in the affirmative.

(2) Does underinsured coverage "stack" on top of uninsured motorist coverage?

(a) Should the stacking of underinsured motorist coverage be allowed on top of underlying coverage which happens to be afforded by the insured's uninsured motorist policy?

(b) Should the terms of the policy be allowed to defeat recovery and frustrate the stacking of the underinsured motorist coverage?

Because of the trial court's finding that Jeffrey was insured, the court did not reach this question.

(3) As to the underinsured motorist coverage in the Schwocherts' policy, are the limits of liability $200,000 or $300,000 where two people sustain bodily injury and four people sustain damage? The trial court answered this as $200,000.

(4) Given the offers of settlement under sec. 807.01, Stats., are the plaintiffs entitled to prejudgment interest and double costs? The trial court answered this in the negative.

---

[1]Since we determine that Jeffrey had liability coverage on his own policy, we need not discuss the issue of waiver of policy defenses.

American Family first argues that the judgment entered in this case has been satisfied due to the Schwocherts accepting $100,000 and executing partial satisfactions of judgment. Therefore, there is no need, it argues, to decide whether Jeffrey was an insured under the policy and whether he was driving a substitute vehicle. American Family cites *Wyandotte Chemicals Corp. v. Royal Electric Mfg.,* 66 Wis. 2d 577, 592, 225 N.W.2d 648 (1975), which stated: "As a general rule, it has been held that if a benefit received is dependent upon, or was granted as a condition of, the order or judgment attacked, the party ought not to be permitted to carry on his warfare." This limitation on the right to seek appellate review was reiterated in *Estreen v. Bluhm,* 79 Wis. 2d 142, 255 N.W.2d 473 (1977).

However, the judgment in this case dated August 1, 1986, was entered pursuant to the stipulation of the parties of July 17, 1986, and was subject to the limitations of that stipulation.[2] The stipulation provided that: "Judgment may be entered herein in favor of plaintiffs against American Family in the amount of the policy limits of its applicable coverages, as finally determined by the court or courts."

The partial satisfaction of judgment in the amount of $100,000 does not state from which policy coverage it was paid. Perhaps American Family's draft shows the policy coverage from which it was paid; however, the draft is not a part of this record.

---

[2]The relevant portion of the August 1, 1986, judgment states:

"4. That pursuant to the stipulation of July 17, 1986, and subject to the limitations contained therein, plaintiffs' claims against Jeffrey Lauth, John Lauth, and Annetta Lauth, in their individual capacities, are hereby dismissed with prejudice and without taxation of costs."

The reference to the stipulation provision does not commit the plaintiffs to accepting the $100,000 and thereby conceding that sum came from Jeffrey's liability policy.

Due to the potential conflict of interest, separate counsel represented Jeffrey on his policy covering his disabled vehicle. John, the father, had separate counsel for his policy. American Family was represented by separate counsel on the applicability of uninsured motorist and underinsured motorist coverages on the Schwocherts' two American Family policies. American Family argues that since Jeffrey admitted in the pleadings to being insured with liability coverage and the Schwocherts also alleged Jeffrey is covered by a liability policy, the issue of Jeffrey having such coverage is foreclosed. However, Jeffrey admitted to having liability coverage but stated: "[T]hat said policy of insurance was and is subject to the terms, conditions and limitations contained therein." In addition, the Schwocherts pled, in the alternative, that if Jeffrey did not have liability coverage, the various uninsured motorist coverages applied. Therefore, the issue of whether Jeffrey was covered by liability insurance was not conclusively resolved by the pleadings.

The forming of the issues in this case is unusual to say the least. The accident was a very unfortunate and serious one. Susan Schwochert died as a result of it. The combined injuries of the Schwochert family members resulted in damages far in excess of $100,000, the amount of Jeffrey's liability coverage. Therefore, the Schwocherts argue that Jeffrey was not covered by his liability coverage in order to present claims against their uninsured motorist coverages of $100,000/$300,000 and another policy of Susan's with

uninsured motorist coverage of $25,000/$50,000. The plaintiffs also seek coverage of their policy of $300,000 of underinsured motorist coverage. If the plaintiffs prevailed on all arguments, the coverages could total $750,000. Thus, it is the plaintiffs' unusual but understandable argument that Jeffrey did not have liability coverage. The Schwocherts' argument is not convincing as to why if Jeffrey did not have liability coverage in order to tap the uninsured motorist coverages of their own policies, they were still entitled to the $100,000 liability coverage of Jeffrey's policy.

The trial court determined American Family's motion *in limine* at the opening of the trial holding there was no jury issue as to Jeffrey's status as an insured motorist under the auto policy issued to him. The court found that construction of insurance policies is for the court and cited *Katze v. Randolph & Scott Mut. Fire Ins.,* 116 Wis. 2d 206, 341 N.W.2d 689 (1984).

The trial court found that Jeffrey's policy did not require that he have any form of permission to use his father's truck because he was using it as a substitute for his own listed disabled truck while it was being repaired. The appropriate portion of Jeffrey's policy was general definition 14d which states:

> "Your insured car means ... any car or utility trailer not owned by you being temporarily used as a substitute for any other vehicle described in this definition, because of its withdrawal from normal use due to breakdown, repair, servicing, loss, or destruction."

This subsection of the policy does not require that Jeffrey have his father's permission to use John's

truck, the accident truck, for it to be considered a substitute for Jeffrey's disabled truck. The Schwocherts concede that Jeffrey was driving the accident truck as a temporary substitute for his own disabled vehicle. Since Jeffrey's disabled truck was specifically listed on the policy, his father's truck took its place as Jeffrey's "insured car" under the policy definitions.

The Schwocherts then argue that the fact Jeffrey was driving his "insured car" does not make him *ipso facto* an "insured person" which he has to be in order to have coverage. This argument refers to the definition of those who are not "insured persons" as follows:

> "But the following are not insured persons:
> "...
> "2. Any person using a vehicle without the permission of the person having lawful possession.
> "3. Any person using a vehicle with the permission of the person having lawful possession, but who exceeds the scope of that permission."

The only permission required by the policy for the use of "your insured car" is that of the named insured.

The testimony of the father was that Jeffrey had used the accident truck the same week to drive to the farm where his disabled truck was located in order to work on it and that this use was with the father's permission. On the night of the accident, the father had not expressly given permission to Jeffrey to use the accident truck in order to get to his disabled truck. However, the father testified he did not deny Jeffrey permission "one way or the other" on the day of the accident. Jeffrey's use at the time of the accident was a continuation and logical extension of the permission the father granted that same week. That permission was not revoked and Jeffrey made the same use of the

truck as a substitute for his disabled truck that was previously permitted.

Jeffrey and his father claim Jeffrey did not have permission to take the accident truck off the farm at the time of the accident. While the permission may not have been direct and immediate to the accident, it was a logical and consistent permitted use by Jeffrey of that truck stemming from the previous permission given by his father which was not altered or revoked before the accident.

The trial court found that since Jeffrey was placed in control and charge of the farm by his father on the day of the accident, Jeffrey had possession of the accident truck as a part of the farm operation and could give himself permission to use it to drive to his disabled vehicle. This finding by the trial court is consistent with the undisputed facts considered on the motions for summary judgment, since Jeffrey had the unrevoked permission previously given by his father for the exact use he made of the truck at the time of the accident.

The plaintiffs assert that permission is a question of fact. Plaintiffs argue that any questions of permission were improperly decided by the trial judge. *Derusha v. Iowa National Mut. Ins. Co.,* 49 Wis. 2d 220, 229, 181 N.W.2d 481 (1970).

However, plaintiffs filed a partial motion for summary judgment on the issue of whether Jeffrey Lauth was uninsured. American Family, defending against the Schwocherts' suit for uninsured motorist benefits, later made a motion for summary judgment on the same issue which the trial court granted. By granting American Family's motion, the trial court found as a matter of law that Jeffrey was insured.

As we stated in *Powalka v. State Mut. Life Assurance Co.*, 53 Wis. 2d 513, 518–19, 192 N.W.2d 852 (1972):

> "Despite plaintiff's request for a jury trial, the reciprocal motions for summary judgment by the defendant and by the plaintiff constituted a waiver of any right to jury trial that might have theretofore existed. A motion for summary judgment carries with it the explicit assertion that the movant is satisfied that the facts are undisputed and that on those facts he is entitled to judgment as a matter of law. We pointed out in *Wiegand v. Gissal* (1965), 28 Wis. 2d 488, 495a, 495b, 137 N.W.2d 412, 138 N.W.2d 740 (per curiam opinion on rehearing), '... the practical effect of the bilateral summary judgment motions was the equivalent of a stipulation as to the facts.'
>
> "Accordingly, the plaintiff's motion for summary judgment, coupled with the defendant's motion, constituted a waiver of her previous request for a jury trial.
>
> "Plaintiff chose to rely on the legal conclusions to be reached by the trial judge on what were, in effect, stipulated and undisputed facts. Plaintiff's later demand for a jury trial made after Judge ROLLER'S decision to grant summary judgment for the defendant was a nullity."

In this case, the trial judge reached the conclusion that Jeffrey was insured on the undisputed facts presented in the depositions and evidence already before him in the record.

The Schwocherts argue that the uninsured motorist coverages in their two policies and the underinsured motorist coverage in their truck policy may be stacked. We do not get to this issue of stacking since the uninsured motorist coverages are not germane

due to there being liability coverage on Jeffrey's truck. However, the concept of uninsured motorist and underinsured motorist coverage is to provide protection in diametrically opposite circumstances. Uninsured motorist coverage is effective where the tortfeasor has no liability insurance and underinsured motorist coverage is effective where there is a tortfeasor with liability coverage but inadequate in amount for the injuries caused.

The Schwocherts also claim that since Jeffrey's liability coverage was insufficient, their underinsured motorist coverage should be available. The Schwocherts' insurance policy on a 1974 pickup truck not involved in the accident carried underinsured motorist coverage limits of $100,000/$300,000. This policy endorsement included a "drive other car" exclusion as follows:

"EXCLUSIONS
"This coverage does not apply for *bodily injury* to a person:
"1. While *occupying,* or when stuck by, a motor vehicle that is not insured under this policy, if it is owned by *you* or any resident of *your* household." (Emphasis in original.)

The Schwocherts did not carry underinsured motorist coverage on their 1976 Chevrolet Monte Carlo vehicle involved in the accident. However, they rely on *Welch v. State Farm Mut. Auto. Ins. Co.,* 122 Wis. 2d 172, 361 N.W.2d 680 (1985), which was a stacking of uninsured motorist coverage case. In the *Welch* case there was uninsured motorist coverage of both vehicles owned and even though only one of them was in the accident, stacking of the coverages was allowed. In this case, however, the Schwocherts only

346

have underinsured motorist coverage on one of their two vehicles and that was not on the one in the accident.

"Drive other car" exclusions had historically been recognized as contractual between the parties and valid until *Welch.* In *Welch* this court reasoned it was dealing with an attempt by the insurer to avoid the uninsured motorist coverage established by legislative mandate by a provision in its policy and that was essential to the decision. There is no reason or requisite for the application of the rule of *Welch* to this case.

The specific holding in *Welch* was that the "drive other car" exclusion in the policy on Welch's truck did not negate the uninsured motorist coverage provisions of that policy. This uninsured motorist coverage was mandatory under sec. 632.32(4), Stats. Underinsured motorist coverage has not been made mandatory under sec. 632.32(4) or any other statute. Therefore, the holding of *Welch* does not encompass underinsured motorist coverage.

The majority opinion of *Welch* makes it clear that the uninsured motorist coverage mandated by statute must be made available under all automobile policies issued in Wisconsin and, therefore, any policy provision that would have the effect of thwarting that legislative purpose was invalid. This conclusion was arrived at by finding that the "drive other car" provision was invalid to bar coverage due to the combined legislative intent of sec. 632.32(4), Stats., uninsured motorist coverage, and sec. 631.43(1), the stacking statute.

The language of *Welch* is clear that the ruling was on the efficacy of "drive other car" exclusions to negate statutory coverages only. The court stated:

347

"The sole issue for review is whether an insurance company which issues two or more insurance policies to the same insured may lawfully include a policy provision in the uninsured motorist section of its policy which excludes coverage for accidents involving motor vehicles owned by the insured but not included in the policy. We hold that they can not. ...

"In *Roe,* this court upheld the enforceability of a 'drive other car' exclusionary clause, finding that such a clause was not inconsistent with the protective purposes of the state's uninsured motorist statute. ...

"The Supreme Court of Michigan when faced with similar fact situations considered the validity of a similar clause and stated: '[i]f insurers can, by such limitations, narrow the scope of their statutory obligation to provide uninsured motorist coverage, it would mean that no one must have portable uninsured motorist coverage.' ...

"We hold that 'drive other car' exclusionary clauses are contrary to the legislative policy and express legislative intent embodied in this state's uninsured motorist and stacking statutes." *Id.* at 175–76, 179, 180, 181.

The determination in *Welch* that the uninsured motorist coverage involved was portable was squarely based upon a determination that it was the legislative intent to establish statutory uninsured motorist coverage that was fully portable. There is no statute that reflects any legislative intent that underinsured motorist coverage be portable. The portability of aspects of underinsured motorist coverage is solely dependent upon the provisions of the insurance contract that establishes it. This policy did not require that the

insured be riding in the described truck in order to be entitled to the underinsured coverage, but it did by this "drive other car" exclusion expressly set forth that the insured would not be covered by the underinsured motorist endorsement while riding in another car that the insured owned but was not described in that policy.

The Schwocherts cite *Gomolka v. State Automobile Mutual,* 15 Ohio St. 3d 27, 472 N.E.2d 700 (1984) and *Sobania v. Integrity Mut. Ins. Co.,* 349 N.W.2d 197 (Minn. Ct. App. 1984), 371 N.W.2d 197 (1985). However, each of those cases dealt with multiple underinsured motorist coverages that were required by statute and both were fundamentally based on the conclusion of those courts that it was the intent of their legislatures to establish underinsured motorist coverage that was portable and stackable.

*McDonald v. Aetna Casualty & Surety Co.,* 47 Wis. 2d 235, 241, 177 N.W.2d 101 (1970), upheld a "drive other car" exclusion in the policy under consideration. The court held: "The obligation of Aetna is spelled out and controlled by the terms of the automobile liability policy it issued. Under the terms of that contract there is no coverage."

*McDonald* was followed by *Limpert v. Smith,* 56 Wis. 2d 632, 638, 203 N.W.2d 29 (1973). The court sanctioned the "drive other car" exclusion and stated:

> "The purpose of defining and limiting the meaning of these terms with respect to these coverage provisions in the automobile liability policies (which terms exclude liability arising out of the use of another automobile owned by or regularly used by a member of an insured's household) is to avoid coverage for several vehicles owned by members of the same family who, by

their close relationship, might be expected to use each other's cars without hindrance and with or without permission. Without this limitation a person could purchase just one policy on only one automobile and thereby secure coverage for all the other vehicles he may own or vehicles the members of his family own while residents of the same household. *National Farmers Union Property & Casualty Co. v. Maca* (1965), 26 Wis. 2d 399, 405, 132 N.W.2d 517; *Giese v. Karstedt* (1966), 30 Wis. 2d 630, 637, 141 N.W.2d 886; and *McDonald v. Aetna Casualty & Surety Co.* (1970), 47 Wis. 2d 235, 177 N.W.2d 101. There is no doubt that a car owner can insure all of the automobiles he owns, but he cannot do so under a policy describing only one such automobile and omitting all others owned by him or by household relatives. *McDonald v. Aetna Casualty & Surety Co., supra.*"

In *Damp v. Zobel,* 85 Wis. 2d 383, 270 N.W.2d 434 (Ct. App. 1978), the "drive other car" exclusion was applied to negate coverage under three auto policies. In *Quinlan v. Coombs,* 105 Wis. 2d 330, 336, 314 N.W.2d 125 (Ct. App. 1981), the "drive other car" exclusion policy provision was extended so as to negate coverage for a driver while using a car owned by a member of his household who was not related to him by blood, marriage or adoption. The court stated:

"We conclude that public policy is enhanced by permitting insurance companies to exclude coverage in those close relationship situations where an insured is driving or has the opportunity to drive cars interchangeably rather than by merely casual use."

The function of the " drive other car" exclusion in the present underinsured motorist endorsement is not

to reduce the insured's underinsured motorist coverage recovery to that afforded by another policy because there is no other insurance against his loss caused by an underinsured motorist. The effect of the application of this exclusion from underinsured motorist coverage would be to exclude that coverage. It is not a reducing clause as considered in the uninsured motorist stacking cases of *Welch* and *Tahtinen v. MSI Ins. Co.,* 122 Wis. 2d 158, 361 N.W.2d 673 (1985) applying the stacking statute, sec. 631.43(1), Stats. This case is not a stacking case but an exclusion case and the stacking statute has no application.

We find that Jeffrey was insured under a policy he purchased for his disabled truck while he was driving the accident vehicle with his father's permission. Since Jeffrey had coverage under his own policy, the Schwocherts' uninsured motorist coverage did not apply to this accident. Jeffrey did not fit the definition of an "uninsured motorist" either under the policy or under sec. 632.32, Stats. *Hemerley v. American Fam. Mut. Ins. Co.,* 127 Wis. 2d 304, 309–10, 379 N.W.2d 860 (Ct. App. 1985). We further find that the underinsured motorist coverage did not apply to the Schwocherts' vehicle that was involved in the accident, because the endorsement for underinsured motorist coverage was written on another vehicle and specifically excluded coverage for damages incurred while in other vehicles of the same household. Because the accident vehicle was not covered with underinsured motorist coverage, neither were the injuries the Schwocherts suffered.

The plaintiffs made two sets of offers of settlement attempting to trigger the prejudgment interest and double cost provisions of sec. 807.01, Stats. The first set was below Jeffrey's liability limits and would

351

have triggered this section but for the fact that it was a joint offer from all the plaintiffs and was not itemized as to amounts demanded for each claimant. *White v. General Cas. Co. of Wisconsin,* 118 Wis. 2d 433, 348 N.W.2d 614 (Ct. App. 1984) specifically prohibited such offers. *White* was decided on March 27, 1984, and the plaintiffs' joint offer was made on November 29, 1984. In *Demars v. LaPour,* 123 Wis. 2d 366, 375, 366 N.W.2d 891 (1985) we accepted the *White* holding that sec. 807.01(3) and (4) does not apply to cases involving a joint offer of settlement made on behalf of multiple plaintiffs.

We do not reach the second set of individual offers of settlement, as under our findings the plaintiffs are not entitled to more than Jeffrey's liability policy limits of $100,000. The second set of offers greatly exceeded this amount, so the provisions of sec. 807.01, Stats., are not involved.

*By the Court.*—The judgment of the circuit court for Columbia county is affirmed in part and reversed in part and remanded for reduction of the judgment consistent with this opinion.