Christopher S. MILLS, Plaintiff-Respondent-Cross Appellant,

v.

WISCONSIN MUTUAL INSURANCE COMPANY, Defendant-Appellant-Cross-Respondent,

ECONOMY FIRE & CASUALTY COMPANY, Defendent-Cross Respondent,

Michael R. WINTZ, Robert Wintz and Sandy Wintz, Defendants.†

Court of Appeals

*No. 87–1474. Submitted on briefs April 5, 1988.—Decided June 9, 1988.*

(Also reported in 427 N.W.2d 397.)

† Petition to review pending. This petition was not disposed of at the time the volume went to press. Its disposition will be reported in a later volume.

473

For the defendant-appellant-cross respondent the cause was submitted on the briefs of *Richard J. Ward* of *Stern & Skiles,* of Madison.

For the plaintiff-respondent-cross appellant the cause was submitted on the brief of *Daniel T. Flaherty* and *Jeffrey C. Mochalski,* of *Johns & Flaherty, S.C.,* of La Crosse.

For the defendant-cross respondent the cause was submitted on the brief of *G. Jeffrey George,* of *Steele, Klos & Flynn, Chartered,* of La Crosse.

Brief of amicus curiae was filed by *Robert J. Kasieta* of *Bell, Metzner & Gierhart, S.C.,* of Madison, on behalf of *Wisconsin Insurance Alliance.*

Before Gartzke, P.J., Dykman and Sundby, JJ.

SUNDBY, J.   In the one-car accident which is the subject of this action, Christopher Mills was injured while riding as a passenger in his father's car. The car was operated, with permission, by his seventeen-year old friend, Michael Wintz.

There were in effect at the time of the accident a motor vehicle insurance policy issued to Christopher's father, Charles Mills, by Wisconsin Mutual Insurance Company, and a motor vehicle insurance policy issued by Economy Fire and Casualty Company to Michael Wintz's parents, Robert and Sandra Wintz. Wisconsin Mutual appeals from an order determining the exposure of the two insurers. Mills cross-appeals. Briefs were filed as amici curiae by the Wisconsin Academy of Trial Lawyers and the Wisconsin Insurance Alliance.

We conclude that the trial court correctly determined the bodily injury liability exposure of Economy Fire and affirm the order in that respect. We reverse the order insofar as it determined Wisconsin Mutual's bodily injury liability exposure and medical services exposure.

## I.

## BACKGROUND OF THE CASE

Wisconsin Mutual insured two vehicles owned by Charles Mills, the vehicle involved in the accident and another. It collected a separate premium for each vehicle. The limits of bodily injury liability were $50,000, each person, and $100,000, each occurrence. The limit of medical services coverage was $1,000, each person.

Economy Fire insured three vehicles owned by Robert and Sandra Wintz, none of which was involved in the accident. Michael Wintz was a "covered person" under the policy. Economy Fire collected a premium for each vehicle. The limits of bodily injury liability were $50,000, each person, and $100,000, each occurrence.

Each policy contained a clause limiting coverage for bodily injury sustained by one person to the amounts listed in the declarations. Wisconsin Mutual's policy also contained a clause limiting its liability for medical services. The parties stipulated for purposes of the summary judgment motions that Mills' damages exceeded policy limits.

Coverage of Michael Wintz is not disputed. The trial court held that the omnibus coverage statute, sec. 632.32(3), Stats., extended Wisconsin Mutual's bodily injury policy-limits coverage to Robert and to Sandra

475

Wintz. As to Economy Fire's policy, however, the trial court held that sec. 632.32(3) did not extend coverage to Robert and Sandra Wintz because the policy did not cover the vehicle involved in the accident.

The trial court rejected Mills' claim that because the insureds paid separate premiums for coverage of each vehicle, sec. 631.43(1), Stats., required "stacking" of the liability coverages. It held, however, that because sec. 631.43(1) prohibits limitations on indemnity coverage, Mills was entitled to "stack" the medical services coverage under Wisconsin Mutual's policy.

The trial court therefore found that Wisconsin Mutual's bodily injury liability exposure to Mills was $150,000 and its medical services exposure to him $2,000, and Economy Fire's bodily injury liability exposure to Mills was $50,000.

## II.

## THE ISSUES

(1) Does the omnibus coverage statute, sec. 632.32(3), Stats., extend bodily injury policy-limits coverage of a motor vehicle liability insurance policy to each parent-sponsor subject to sec. 343.15(2), Stats?

(2) Does the omnibus coverage statute extend coverage of a motor vehicle liability insurance policy to a parent-sponsor subject to sec. 343.15(2), Stats., for the negligence of the minor child in operating a motor vehicle not listed in the policy declarations?

(3) Where a motor vehicle insurance policy insures two or more vehicles and a separate premium is collected for each vehicle, does sec. 631.43(1), Stats., or public policy, invalidate a policy provision which

limits the insurer's maximum liability and prevent the "stacking" of coverages?

## III.

## COVERAGE OF PARENT-SPONSORS

### A.  *Wisconsin Mutual's Policy*

The trial court held that the omnibus coverage statute, sec. 632.32(3), Stats., extends Wisconsin Mutual's policy limits of $50,000 liability coverage each to Robert and Sandra Wintz to protect them against their liability under the sponsorship statute, sec. 343.15, Stats. Section 343.15(2) provides:

> Any negligence or wilful misconduct of a person under the age of 18 years when operating a motor vehicle upon the highways is imputed to the parents where both have custody and either parent signed as sponsor, otherwise, it is imputed to the adult sponsor who signed the application for such person's license. The parents or the adult sponsor is jointly and severally liable with such operator for any damages caused by such negligent or wilful misconduct.

Sandra Wintz signed Michael Wintz's application for an operator's license.

Section 632.32(3), Stats., provides:

> Except as provided in sub. (5),[1] every policy subject to this section issued to an owner shall provide that:
> (a)  Coverage provided to the named insured applies in the same manner and under the same provisions to any person using any motor vehicle

[1]Sub.(5) of sec. 632.32, Stats., has no application to this case.

477

described in the policy when the use is for purposes and in the manner described in the policy.

(b) Coverage extends to any person legally responsible for the use of the motor vehicle.

The insurance contract between Wisconsin Mutual and Charles Mills provided:

We will pay no more than [the policy declaration] maximums regardless of the number of vehicles described in the Declarations, *insured persons,* claims, claimants or policies, or vehicles involved in the occurrence. (Emphasis in original.)

Wisconsin Mutual argues that this clause limiting its liability does not contravene any statute or public policy and is enforceable.

Mills does not argue that the language of Wisconsin Mutual's policy extends $50,000 coverage each to Robert and Sandra Wintz. He argues that the "interplay" of secs. 343.15(2) and 632.32(3), Stats., requires this result. We interpret Mills' argument to be that Wisconsin Mutual's limit-of-liability clause is superseded by these statutes.

We conclude that *Landsinger v. American Family,* 142 Wis. 2d 138, 417 N.W.2d 899 (Ct. App. 1987) controls.[2] *Landsinger* involved injuries resulting from the negligent operation of a vehicle by a servant of the named insured. American Family's policy limited its bodily injury liability coverage to $100,000 for each injured person. The injured party argued that sec. 632.32(3)(b), Stats., required that American Family

[2]The writer of this opinion agrees that *Landsinger* controls but suggests that the applicability of the omnibus coverage statute should be reexamined in light of the legislative history of the statute and the cases decided thereunder, most notably *Smith v. National Indemnity Co.,* 57 Wis. 2d 706, 205 N.W.2d 365 (1973).

extend separate policy-limits coverage to the master and to the servant. We held that because the master's negligence was based solely upon that of her servant, *Miller v. Amundson,* 117 Wis. 2d 425, 345 N.W.2d 494 (Ct. App. 1984) did not apply. *Landsinger,* 142 Wis. 2d at 142, 417 N.W.2d at 900. In *Miller* we held that where the named insured and an additional insured were each actively negligent, the omnibus coverage statute extended policy-limits protection to each, despite a limit-of-liability clause in the policy. *Miller,* 117 Wis. 2d at 430, 345 N.W.2d at 497.

■ *Landsinger,* 142 Wis. 2d at 143, 417 N.W.2d at 901, holds that each person to whom the negligence of another is imputed is not entitled to policy-limits protection under sec. 632.32(3)(b), Stats. Because the liability of Robert and Sandra Wintz is based upon the imputed negligence of Michael, coverage is "extended" to them as required by sec. 632.32(3)(b) by Wisconsin Mutual's policy which protects them against liability to the extent of the bodily injury liability limits of its policy. *Id.* Wisconsin Mutual's limit-of-liability clause does not therefore conflict with the omnibus coverage statute. The trial court erred in determining Wisconsin Mutual's bodily injury liability exposure to Mills.

## B. *Economy Fire's Policy*

Mills further argues that the omnibus coverage statute extends the coverage of Economy Fire's policy to Robert and Sandra Wintz. The automobile being operated by Michael Wintz at the time of the accident was, of course, not described in Economy Fire's policy. Economy Fire argues that under *Damp v. Zabel,* 85

Wis. 2d 383, 270 N.W.2d 434 (Ct. App. 1978), the omnibus coverage statute does not extend coverage to Robert or Sandra Wintz because, at the time of the accident, Michael was not using a motor vehicle described in its policy.

The court in *Damp,* 85 Wis. 2d at 388, 270 N.W.2d at 436, found that *Limpert v. Smith,* 56 Wis. 2d 632, 203 N.W.2d 29 (1973), controlled. In *Limpert,* 56 Wis. 2d at 640, 203 N.W.2d at 33, the court held that an insurance policy issued to a father who sponsored his son's driver's license under sec. 343.15(1), Stats., did not extend coverage to him for his liability for the negligence imputed to him from the son's negligent operation of his own car, because the policy provided coverage only of cars described in the policy and nonowned automobiles.

Mills argues that *Damp* (and, presumably, *Limpert*) is no longer precedential because of amendments to the omnibus coverage statute. He contends that amendments to the statute "sever[ed]" the connection between coverage and the use of a motor vehicle described in the policy. Because Michael Wintz is a "covered person" under Economy Fire's policy, and Robert and Sandra Wintz are jointly and severally liable for his negligence, Mills contends that sec. 632.32(3)(b), Stats., extends coverage to them, whether or not the vehicle being operated by Michael was described in the policy.

We conclude that "the motor vehicle" referred to in par. (b) of sec. 632.32(3), Stats., refers back to "any motor vehicle described in the policy" in par. (a). The legislative history of the omnibus coverage statute does not reflect that the legislature by amendment intended to "sever" the connection between pars. (a) and (b) of sec. 632.32(3).

What is now sec. 632.32(3), Stats., was created as sec. 204.30(3), Stats. (1925), by sec. 2(3), ch. 372, Laws of 1925 and read as follows:

> No [liability insurance policy] shall be issued or delivered in this state ... to the owner of a motor vehicle ... unless there shall be contained within such policy a provision reading substantially as follows: The indemnity provided by this policy is extended to apply, in the same manner and under the same provisions as it is applicable to the named assured, to any person or persons while riding in or operating any automobile described in this policy when such automobile is being used for purposes and in the manner described in said policy. Such indemnity shall also extend to any person, firm or corporation legally responsible for the operation of such automobile. ....

As enacted, "such automobile" referred back to "any automobile described in this policy." This section was recreated as sec. 632.32(2)(b), Stats. (1975), by sec. 42, ch. 375, Laws of 1975. The committee note to the section reads: "Subs. (1), (2) and (3) continue s. 204.30(2), (3) and (5) respectively, with many editorial changes. In the case of sub. (2) some changes are made to permit though not to require some broader coverage." *Id.* The section was created in its present form by sec. 171, ch. 102, Laws of 1979. The Insurance Laws Revision Committee notes do not mention sub. (3). The committee's introductory note to ch. 102, Laws of 1979 indicates that many of the changes incorporated in the act "are minor corrections designed to provide uniform language."

The legislative changes to the omnibus coverage statute have been largely editorial. We have been

unable to find any history to suggest a legislative intention to broaden the scope of the statute to extend coverage to persons operating vehicles not described in the policy. We therefore reject Mills' argument that the legislative changes to the omnibus coverage statute operated to "sever" the relation between par. (a) and par. (b) of the statute. *Damp,* 85 Wis. 2d at 390, 270 N.W.2d at 437, and *Limpert,* 56 Wis. 2d at 640, 203 N.W.2d at 33, control the issue. The omnibus coverage statute does not extend coverage to a vehicle not described in the automobile liability insurance policy.

## IV.

## THE STACKING ISSUE

### A. *Liability Coverage*

Mills contends that the liability coverages under both policies should be stacked for each vehicle covered and each premium paid.[3] He argues that sec. 631.43(1), Stats., and public policy require this result.

### 1. *Section 631.43(1), Stats.*

This is not a stacking case under sec. 631.43(1), Stats., because there are not involved two or more policies promising to indemnify an insurer against the same loss.[4] Mills seeks intra-policy "stacking" based

---

[3]Wisconsin Mutual did not file a cross-respondent's brief in response to Mills' cross-appeal. However, this issue was adequately briefed by Economy Fire and amici curiae.

[4]Section 631.43(1), Stats., provides:

When 2 or more policies promise to indemnify an insured against the same loss, no "other insurance" provisions of the policy may reduce the aggregate protection of the insured below the lesser of the actual insured loss suffered by the insured or the total indemnification promised by the policies if there were no

on the number of vehicles covered by each policy and the separate premiums paid for each coverage. *Burns v. Milwaukee Mut. Ins. Co.,* 121 Wis. 2d 574, 578, 360 N.W.2d 61, 64 (Ct. App. 1984), held that the "2 or more policies" language is satisfied if separate premiums are paid for each covered automobile. However, that case did not consider bodily injury liability coverage but dealt with uninsured motorist coverage which is "personal and portable," *Welch v. State Farm Mut. Auto. Ins. Co.,* 122 Wis. 2d 172, 179, 361 N.W.2d 680, 684 (1985), and is mandated by statute, sec. 632.32(4), Stats. *See Schwochert v. American Family Ins.,* 139 Wis. 2d 335, 347 407 N.W.2d 525, 530–31 (1987) (*Welch* does not encompass underinsured motorist coverage because such coverage has not been mandated by statute).

Conceptually it is desirable to consider uninsured motorist coverage as personal insurance providing protection to the insured against injury caused by an uninsured motorist. When the insured pays two premiums, he or she obtains two protections regardless of whether the coverage is provided in one policy or two policies. Uninsured motorist protection follows the person. *Welch,* 122 Wis. 2d at 181, 361 N.W.2d at 684–85. Liability coverage, however, follows the vehicle, not the person. *See Hulsey v. American Family Mut. Ins.,* 142 Wis. 2d 639, 647, 419 N.W.2d 288, 291

"other insurance" provisions. The policies may by their terms define the extent to which each is primary and each excess, but if the policies contain inconsistent terms on that point, the insurers shall be jointly and severally liable to the insured on any coverage where the terms are inconsistent, each to the full amount of coverage it provided. Settlement among the insurers shall not alter any rights of the insured.

(Ct. App. 1987)("Fairness dictates that liability insurance always be linked to a particular vehicle, so that no one obtains a 'free ride' ....").

We therefore reject Mills' implicit argument that sec. 631.43(1), Stats., voids a bodily injury limit-of-liability clause in an automobile insurance policy which extends coverage to two or more vehicles for which premiums are paid.

## 2. *Public Policy.*

Mills further argues that public policy requires that Economy Fire's policy be construed to extend liability coverage to Robert and Sandra Wintz equal to the policy limits applicable to each of their three insured automobiles. This public policy is based on a benefit-of-bargain argument. He incorporates this argument in his claim that the bodily injury coverage under Wisconsin Mutual's policy should also be stacked.

For car 1 the Wintzes paid for bodily injury liability coverage a six-months premium of $52, on car 2, $45 and on car 3, $26. For car 1, Charles Mills paid for bodily injury liability coverage a six-months premium of $50.80 and for car 2, $16. Mills argues, without any support in the record, that the reduction in premiums represents a credit for reduced administrative expense and savings premised on economies of scale, rather than reduced coverage.

The Wisconsin Supreme Court considered a similar argument in *Rosar v. General Ins. Co.,* 41 Wis. 2d 95, 163 N.W.2d 129 (1968). The issue was whether a father, under the sponsorship statute, had double coverage because he paid premiums on two automobiles, even though only one of the insured vehicles was involved in the accident. The insurer's policy con-

tained a limit-of-liability clause substantively identical to those contained in Economy Fire's and Wisconsin Mutual's policies. The court gave effect to the clause. *Id.* at 101, 163 N.W.2d at 131.

Mills does not identify any public policy other than that implicit in the separate premium, separate coverage argument. "In the absence of contrary authority, policy exclusions and limitations are valid as applied to most forms of insurance, 2 G. Couch, *Cyclopedia of Insurance Law,* sec. 15.48 (2d ed. 1981), and can usually limit both the indemnity provisions and liability provisions that lie within the four corners of the policy." *Hulsey,* 142 Wis. 2d at 644, 419 N.W.2d at 290. Mills does not point to any "contrary authority" which voids a bodily injury limit-of-liability clause. Such contrary authority must come from the legislature. *See Landvatter v. Globe Security Ins. Co.,* 100 Wis. 2d 21, 24, 300 N.W.2d 875, 877 (Ct. App. 1980) ("reducing" clauses do not violate public policy; their prohibition must emanate from the legislature).

The Academy argues that Robert and Sandra Wintz would have been much better off if they had insured each of their three vehicles with a separate insurer. However, in that event, they would have paid a full premium for each coverage. Contrary to the Academy's assertion, freedom of contract does exist between an insurer and an insured with regard to motor vehicle coverage. The "Econo-Plan Personal Auto Policy" issued to the Wintzes by Economy Fire and the "Family Car Policy" issued to Charles Mills by Wisconsin Mutual effected for the insureds significant premium savings. We do not accept the argument that there is something fundamentally unfair in limiting bodily injury liability coverage in a multiple vehicle policy to the policy limits, where that limit has

been freely and knowingly bargained. *See Rural Mut. Ins. Co. v. Peterson,* 134 Wis. 2d 165, 170, 395 N.W.2d 776, 778 (1986) (parties are at liberty to enter into insurance contracts limiting coverage). Appleman states: "We may summarize the situation where there is a single policy owner, single company, and multiple vehicles by saying that the proper result is: 'What you buy is what you get—and no more.'" 8C Appleman, *Insurance Law & Practice,* sec. 5101, at 450–51 (1981).

We conclude that Charles Mills and the Wintzes got what they paid for—economy and family plan policies insuring their automobiles according to reduced premium schedules. They did not contract for nor should they have any reasonable expectation that the bodily injury liability coverage for each vehicle will be stacked when an insured vehicle or a covered person is involved in an automobile accident.[5]

### B. *Medical Services Coverage*

Finally, we address the "stacking" of medical services coverage under Wisconsin Mutual's policy. Mills contends that Wisconsin Mutual's policy is ambiguous as to medical services coverage because Charles Mills paid a separate premium for medical services coverage on two vehicles. He argues that the ambiguity should be resolved against Wisconsin Mutual. *Wilke v. Eau Claire First Fed. Sav. & Loan,* 108 Wis. 2d 650, 655, 323 N.W.2d 179, 181 (Ct. App. 1982).

We do not find the policy provisions ambiguous. Part B of the policy deals with expenses for medical

---

[5]Our opinion does not extend to the validity of a limit-of-liability clause where two or more insured vehicles are involved in the same occurrence.

services. The "limit of liability" clause applicable to Part B provides:

> Regardless of the number of vehicles described in the Declarations, insured persons, claims or policies, or vehicles involved in the accident, we will pay no more than the limit of liability shown for this coverage in the Declarations for each person injured in any one accident.

The policy declaration lists the limit of liability for medical services to $1,000, each person. These provisions clearly and unambiguously limit Wisconsin Mutual's medical services coverage to $1,000 for each person injured in any one accident.

The Academy argues that because medical services coverage is portable indemnity coverage, we should apply the rule which we and the Wisconsin Supreme Court have applied in a number of cases to allow the stacking of uninsured motorist coverage. *Tahtinen v. MSI Ins. Co.,* 122 Wis. 2d 158, 162, 361 N.W.2d 673, 675 (1985); *Welch,* 122 Wis. 2d at 173, 361 N.W.2d at 681; *Burns,* 121 Wis. 2d at 579, 360 N.W.2d at 64. We interpret the Academy's argument to be that the limit-of-liability clause in Part B "offends sec. 631.43(1), Stats." *Burns,* 121 Wis. 2d at 577, 360 N.W.2d at 63.

As we have previously stated, this is not a "stacking" case under sec. 631.43(1), Stats., because it does not involve two or more policies which promise to indemnify an insured against the same loss. Section 631.43(1) does not void limit-of-liability clauses which prohibit intra-policy "stacking of medical services coverage." The holding of *Burns,* 121 Wis. 2d at 578, 360 N.W.2d at 64, that the payment of two premiums satisfies the "2 or more policies" prerequisite of sec.

631.43(1), Stats., does not apply because, unlike uninsured motorist coverage, medical services coverage is not mandated by statute.[6] Mandatory uninsured motorist coverage is Wisconsin's substitute for mandatory motor vehicle insurance. *Tahtinen,* 122 Wis. 2d at 171, 361 N.W.2d at 680 (Steinmetz, J., dissenting).

The Academy also argues that we should follow the lead of some courts in other jurisdictions which have, as a matter of public policy, required the stacking of medical services coverage when the insured has paid premiums for two or more vehicles.

Appleman annotates decisions which recognize a policy limitation on medical pay liability and others which, when a separate premium is paid, permit stacking of medical pay coverage under considerations of public policy. 8A Appleman, *Insurance Law & Practice,* sec. 4902.55, at 271–77 n. 6 and 7 (1981). However, where the policy language is unambiguous, stacking is usually not required. *United Services Automobile Association v. Smith,* 329 So. 2d 562 (Ala. Civ. App. 1976); *Hansen v. Liberty Mutual Fire Insurance Co.,* 157 S.E.2d 768 (Ga. Ct. App. 1967); *Phillips v. Inter-Ins. Exchange of Chicago,* 414 N.E.2d 226 (Ill.

---

[6]Section 632.32(4)(b), Stats., requires motor vehicle insurance to include a provision:

> To indemnify for medical payments or chiropractic payments or both in the amount of at least $1,000 per person for protection of all persons using the insured motor vehicle from losses resulting from bodily injury or death. The named insured may reject the coverage. ... Coverage written under this paragraph may be excess coverage over any other source of reimbursement to which the insured person has a legal right.

Section 632.32(4)(b) allows the parties to contract for medical services coverage and does not void "other insurance" or coverage-limiting provisions.

App. Ct. 1980); *Jones v. Allstate Ins. Co.,* 429 So. 2d 241 (La. Ct. App. 1983); *Grimes v. Concord Gen. Mut. Ins. Co.,* 422 A.2d 1312 (N. H. 1980). Since Wisconsin Mutual's policy unambiguously prohibits such stacking, the contract provisions prevail.

*By the Court.*—Order affirmed in part and reversed in part.