Cameron J. CARRINGTON, f/k/a Cameron J. Cotton, by his Guardian ad Litem, Arthur B. Nathan, Plaintiff-Co-Appellant,

v.

ST. PAUL FIRE & MARINE INSURANCE COMPANY, a foreign corporation, Defendant-Respondent,†

Wesley R. JARRELL and Jonathan A. Wollman, Defendants,

Dorthea EVANS, Defendant-Appellant.

Lori L. JARRELL, Plaintiff,

v.

ST. PAUL FIRE & MARINE INSURANCE COMPANY, Defendant-Respondent,†

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a foreign corporation,

Wesley R. JARRELL, Cameron J. Carrington, f/k/a Cameron J. Cotton, and Jonathan A. Wollman, Defendants,

Dorthea EVANS, Defendant-Appellant.

Court of Appeals

*No. 90-0834. Submitted on briefs May 7, 1991.—Decided July 30, 1991.*

(Also reported in 473 N.W.2d 591.)

† Petition to review granted.

For appellant Dorthea Evans the cause was submitted on the briefs of *Ronald Bornstein* of *Robert Silverstein & Associates, S.C.,* of Milwaukee.

For co-appellant Cameron Carrington the cause was submitted on the briefs of *Arthur B. Nathan* of *Nathan Law Office, S.C.,* of Racine.

For respondent St. Paul Fire & Marine Insurance Company the cause was submitted on the briefs of *Douglas J. Carroll* of *O'Neill, Schimmel, Quirk & Carroll, S.C.,* of Milwaukee.

Before Moser, P.J., Fine and Sullivan, JJ.

SULLIVAN, J.   This case involves the construction of an insurance contract and the coverage afforded under the uninsured motorist (UM) clause contained in a policy issued to a youth home.[1] There are no material facts in question. The issues present a question of law which we review *de novo. Martin v. Milwaukee Mut. Ins. Co.,* 146 Wis. 2d 759, 766, 433 N.W.2d 1, 3 (1988).

The undisputed facts involve a car accident. On the day of the collision, the appellants, Cameron J. Carrington and Dorthea Evans (collectively, the children), both minors, resided at Sunburst Youth Homes, Inc.

---

[1]This court's request for certification was denied by the supreme court on April 9, 1991.

(Sunburst) under orders extending dispositional orders of the juvenile court. These orders determined that Carrington and Evans were children in need of protection and services (CHIPS), and placed their custody with the department of social services of their respective counties of residence.[2] They were on an outing with a Sunburst employee, Wesley Jarrell, and another adult, Lori Jarrell. Both children sustained injuries when, as passengers in a Sunburst-owned 1986 Dodge Omni, they were struck by an uninsured vehicle which allegedly crossed the center line of the highway. St. Paul Fire & Marine Insurance Company (St. Paul) had issued a commercial fleet policy to Sunburst, including coverage for the occupied vehicle.

Evans appeals from a summary judgment granted to St. Paul which declared, *inter alia,* that its UM provision afforded occupancy coverage only, and which also dismissed her complaint.[3] Carrington appeals the same judgment.

The trial court determined that Evans and Carrington were not named insureds, but occupancy insureds. Applying the single-limit provision,[4] the court limited all injured parties' recovery to a total of $100,000. The consequence of finding the children to be occupancy insureds and applying the single-limit provision is that it precludes stacking the UM coverage of the

---

[2]*See* sec. 48.13(10), Stats.

[3]St. Paul paid $100,000 into court. This was distributed to the two minor residents and Lori Jarrell, who was also injured in the collision. Upon stipulation, the trial court ordered distribution of the fund.

[4]The single-limit provision states:

**Single limit.** If a single limit is shown, it is the most we'll pay for all damages resulting from bodily injury caused by any one accident. This limit applies no matter how many covered autos or protected persons are involved or how many claims are made.

other vehicles owned by Sunburst and insured by St. Paul.

This case presents two issues. First, does a UM provision of a commercial fleet policy issued to a corporate insured include two minors who had been placed by juvenile courts at a corporate insured facility under CHIPS dispositional orders as named insureds.[5] Second, if the children were named insureds, does the single limit UM policy coverage of $100,000 preclude the stacking of the coverages of multiple insured vehicles, regardless of the number of insured vehicles and the number of protected persons or the number of claims filed, and whether the single-limit language of the policy violates sec. 631.43(1), Stats.

## I.

The resolution of whether the children may stack the UM coverage of the noninvolved vehicles is dependent upon first, their status under the insurance policy. The children can either be "occupancy insureds,"[6] i.e., individuals having insurance coverage merely because they were occupants of the insured vehicle struck by an uninsured motorist, or they can be "named insureds." As occupancy insureds, they cannot stack the UM coverage of the noninvolved vehicles. If they are also named insureds, they may stack the insurance coverage.[7]

---

[5]Evans' dispositional order placed her at Child & Adolescent Treatment Center and provided that, when released, she be placed at an appropriate treatment center. At the time the first extension petition was filed, Evans resided at Sunburst. Carrington's extension of the dispositional order extended his placement at Sunburst.

[6]Lori Jarrell was an occupancy insured. She did not reside at nor was she employed by Sunburst.

[7]Sunburst argues that even if the children are named

In answering the question of whether the children were named insureds under Sunburst's fleet policy, St. Paul argues that because the policy was issued to Sunburst, its unambiguous language defining protected persons could not apply to the children. The policy, in part, provides:

### Who Is Protected Under This Agreement

*Protected persons* are people and organizations protected under this agreement. Each is protected separately. However, the limits of coverage shown in the Coverage Summary are shared by all protected persons.

Here's a list of "protected persons" and certain limitations on their liability protection.

● **You.**

● **A member of your family.**

*A member of your family* is a person who is related to you by blood, marriage or adoption and lives in your home. A ward or foster child who lives with you is also considered to be a member of your family.

● **Anyone else in a covered auto.** Anyone else while in a covered auto or a temporary substitute auto is protected.

The children are occupancy insureds at the very least because they were passengers in the insured vehicle. However, St. Paul contends that because Sunburst is an inanimate and bloodless corporate entity, it could not have a family of which any children could be members, nor does it have a home where children, as wards or foster children, could live. Because no "family" exists,

insureds, the single-limit provision in the policy precludes stacking the coverage.

St. Paul argues that the children's recovery is limited to their status as occupants and not amenable to stacking. In *Martin,* 146 Wis. 2d at 766, 433 N.W.2d at 3, the supreme court determined that passengers, occupancy insureds who were not named insureds, were not covered by insurance on a noninvolved vehicle. St. Paul contends that the policy's failure to name any insured other than the Sunburst corporate entity eliminates the children as named insureds. *See, e.g., American Fire and Casualty Co. v. Sinz,* 487 So. 2d 340, 340–41 (Fla. Dist. Ct. App. 1986).

The children contend that they are named insureds, and hence, covered by approximately eighteen noninvolved vehicles named in St. Paul's fleet policy.[8] They reason that the term "protected person" includes "You," which the policy defines as:

> The words you, your and yours mean the insured named here:
>
> Sunburst Inc. of Wisconsin
> Sunburst Youth Homes, Inc.
> Sunburst Care Facilities, Ltd.
> Sunburst Foundation, Inc.
> Neillsville, WI 54456
>
> Which is a:
> x corporation          — individual
> — partnership          — joint venture
> — other                — condominium

[8]The policy lists each covered vehicle and separately declares the premium rate for each. Coverage for two of the vehicles was omitted in August of 1985; however, coverage reappeared on the policy issued in January of 1986.

Their reasoning posits that Sunburst is named as a protected person, or insured, and that protected persons include "[a] ward or foster child who lives with you" as a member of "your family." Because the juvenile court placed the children with Sunburst, a group home, they assert that they qualify under St. Paul's policy as named insured wards or foster children. If the children are named insureds, they may stack UM coverage provided to all noninvolved vehicles. As persons operating a home which receives children under court order, Sunburst's owners could reasonably expect that such children would benefit from coverage as named insureds. We agree.

*A.G. v. Travelers Insurance Co.*, 112 Wis. 2d 18, 24, 331 N.W.2d 643, 646 (Ct. App. 1983), determined that a one-year, juvenile court placement of a child in a family foster home[9] upon a delinquency finding qualified the child as a "resident" of the household for insurance purposes. In *A.G.*, we limited the scope of our holding in the following language:

> We hasten to add that we expressly are not deciding whether foster homes owned by the state or a county agency fall within the ambit of this case; nor are we deciding whether group homes are of the same genre.

*Id.* at 25, 331 N.W.2d at 647.

There are certain practical considerations to warrant a consistency in determining that a foster child, placed by a county agency or court in a facility other than a family foster home, is a "member of the family" for insurance purposes of that facility. After a court finds that a child is in need of protection or services, it is faced with the consideration of numerous placement alternatives. Among other things, the court may consider placing the child in the home of a relative, an unlicensed

---

[9]*See* sec. 48.34(3)(c), Stats.

foster home, a licensed foster home, a group home, or a residential treatment center. *See* secs. 48.345, 48.34(3), Stats.

In determining the type of placement that would be in the best interest of the child, an unnecessary burden would be placed upon the courts and child welfare agencies if there was an inconsistency whereby a child, as a matter of law, would be held to be a member of the family for insurance purposes while a resident of a foster home, but not at a group home; or at a group home or a foster home, but not at a residential care facility.

We now determine that the rationale of *A.G.* should be extended to include as named insureds, for UM stacking purposes, CHIPS children placed by court order into a corporate home to which the UM policy is issued. Evans and Carrington, as court-placed children in a group home,[10] are therefore named insureds under a fleet liability policy issued to Sunburst, the corporate home.

## II.

Since we have determined that Evans and Carrington are named insureds, the second issue is whether St. Paul's $100,000 single-limit policy provision[11] precludes stacking and whether the single-limit language of the policy violates sec. 631.43(1), Stats. The statute provides in part:

> **Other insurance provisions. (1)** General. When 2 or more policies promise to indemnify an insured against the same loss, no "other insurance" provi-

---

[10]The description of Sunburst as a group home is not assailed by St. Paul, which in its brief refers to Sunburst as a "youth home."

[11]*See* policy language, *supra* note 3.

sions of the policy may reduce the aggregate protection of the insured below the lesser of the actual insured loss suffered by the insured or the total indemnification promised by the policies if there were no "other insurance" provisions.

St. Paul argues that even if the children are named insureds, their recovery is limited to the unambiguous single-limit language of the policy. The children argue that sec. 631.43(1) bars exclusion of other insurance to reduce the aggregate pool of money available for coverage.

In *Hulsey v. American Family Mut. Ins. Co.,* 142 Wis. 2d 639, 419 N.W.2d 288 (Ct. App. 1987), Jill Hulsey, who was a resident in her father's home, was injured while riding as a passenger on a friend's motorcycle. The friend had no liability insurance. The court of appeals permitted the daughter to recover UM benefits under her father's policy in addition to recovering under her own UM policy provision. *Id.* at 648–49, 419 N.W.2d at 292. The court determined that sec. 631.43(1), Stats., mandates indemnity insurance for named insureds injured by uninsured drivers and moreover, prohibits reduction of aggregate protection.

St. Paul contends that the express terms of the fleet policy limit recovery for all vehicles to $100,000 and consequently precludes stacking. St. Paul also seeks the umbrage of sec. 632.32(4), Stats., which mandates minimum insurance in "every policy" which insures "any motor vehicle." It argues that this statute does not mandate UM coverage for each listed vehicle contained within one policy document. In short, because the policy language limits total coverage to $100,000, recovery is limited to that amount, regardless of how many vehicles are listed. St. Paul asserts that the effect of this lan-

guage, as well as Sunburst's corporate status, limits coverage to a total of $100,000 caused by the accident.

In relying on *Hulsey,* the children assert that St. Paul's listing of the individual vehicles and the assessment of separate premiums for each, although contained in one policy document, is in effect a policy for each vehicle. *See Burns v. Milwaukee Mut. Ins. Co.,* 121 Wis. 2d 574, 578, 360 N.W.2d 61, 63–64 (Ct. App. 1984). Because sec. 632.32(4)(a), Stats.,[12] mandates UM coverage in each policy, they may recover under each. "When the insured pays two premiums, he or she obtains two protections regardless of whether the coverage is provided in one policy or two policies." *Mills v. Wisconsin Mut. Ins. Co.,* 145 Wis. 2d 472, 483, 427 N.W.2d 397, 402 (Ct. App. 1988).

We agree that a fleet policy which lists the individual vehicles and assesses a separate premium for each, regardless of whether this information is contained in one or several policies, is in effect a separate policy for each vehicle. *See Burns,* 121 Wis. 2d at 578, 360 N.W.2d at 63–64. This fleet policy, which limits recovery for each accident to $100,000, violates sec. 631.43(1), Stats. As set forth in *Hulsey:*

---

[12]Section 632.32(4)(a), Stats., provides in part:

**(4) Required Uninsured Motorist and Medical Payments Coverages.** Every policy of insurance subject to this section that insures with respect to any motor vehicle registered or principally garaged in this state against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall contain therein or supplemental thereto provisions approved by the commissioner:

    (a)   *Uninsured motorist . . ..*

In Wisconsin, however, there is an exception to this rule regarding indemnity insurance in the form of uninsured motor vehicle coverage. The legislature has promulgated sec. 632.32(4)(a), Stats., which mandates uninsured motor vehicle coverage in every automobile policy. Of equal importance, the legislature has enacted sec. 631.43, Stats., prohibiting insurers from circumscribing the aggregation of *uninsured motorist benefits. Welch [v. State Farm Mut. Auto. Ins. Co.],* 122 Wis. 2d at 177, 361 N.W.2d at 683 [1985].

Thus, in Wisconsin, exclusionary clauses that may otherwise be valid in limiting the aggregation of benefits in multiple policies, or within the same policy, are not valid when attempting to limit uninsured motorist coverage. *Nicholson v. Home Ins. Co.,* 137 Wis. 2d 581, 594, 405 N.W.2d 327, 332 (1987). It is a prohibited practice in Wisconsin for an insurer to deny, by policy limitation, the personal and portable nature of the indemnity insurance known as uninsured motorist protection. *See Welch,* [122 Wis. 2d] at 179, 361 N.W.2d at 684. The personal and portable nature of uninsured motorist protection is allowed by law to exist. This means that an insured may "carry" this particular part of the insurance policy and place it on top of other insurance policies providing similar coverage, even though prohibiting clauses exist regarding the rest of a policy. *Cf. id.* at 180–81, 361 N.W.2d at 684–85.

*Hulsey,* 142 Wis. 2d at 644–46, 419 N.W.2d at 290–91 (citations and emphasis in original, footnotes omitted). Following the reasoning set forth in *Hulsey,* the single limit provision as set forth in this case does not prevent the stacking of UM coverage of the noninvolved vehicles.

In conclusion, the children, Evans and Carrington, are the equivalent of "wards or foster children" and meet the definition of protected persons under St. Paul's pol-

icy. Hence, they are named insureds and entitled to coverage of the listed but noninvolved vehicles. Further, the single limit provision contained in the policy violates sec. 631.43(1), Stats. This provision of the policy cannot limit the coverage for each accident to a total of $100,000 for the entire fleet.

*By the Court.*—Judgment reversed.

Fine, J. *(dissenting)*. This case involves two children whose legal custody was transferred to their respective counties of Milwaukee and Wood pursuant to secs. 48.34(4)(b) and 48.435(1), Stats. At the time of the accident that underlies this lawsuit, the children were residing at a facility operated by Sunburst Youth Homes, Inc., in Neillsville, Wisconsin. Sunburst was insured under a commercial fleet liability policy issued by St. Paul Fire and Marine Insurance Company. On appeal, appellant contends that he is entitled to multiply the policy's single-limit uninsured-motorist coverage by the total number of motor vehicles insured under the policy. At the time of the accident on April 27, 1986, the policy covered eighteen vehicles: seven cars, five vans, two station wagons, one truck, one bus, and two snowmobiles. According to the dispositional order entered with respect to the child whose legal custody was transferred to Milwaukee County, Sunburst Youth Home in Neillsville, Wisconsin, where both children were residing at the time of the accident, was a "residential treatment center." Residential treatment centers, foster homes, and group homes are different types of facilities. *See* secs. 48.02(6) & (7), 48.34 (3)(c) & (d), 48.62, and 48.625, Stats.

Since, as the majority points out, the children may stack uninsured-motorist coverages only if they are named-insureds under the St. Paul policy, *see Martin v. Milwaukee Mut. Ins. Co.,* 146 Wis. 2d 759, 762, 433

160

N.W.2d 1, 2 (1988), the initial issue is whether the children are named-insureds. Under the clear language of the policy, I believe that only the child whose custody was transferred to Milwaukee County was a named-insured. The second issue is whether "stacking" is permitted here at all; namely, whether the policy's single-limit uninsured-motorist coverage is abrogated by section 631.43(1), Stats. For the reasons discussed below, I conclude that it is not.

## I.

The St. Paul policy's uninsured-motorist coverage protects "[a] ward or foster child who lives with you." The policy defines the words "you, your and yours" as they appear in the policy to include Sunburst and Milwaukee County, which is an additional insured under an endorsement to the policy. Wood County is not an additional insured under the policy. Accordingly, the policy protects those who live "with" Sunburst as either "wards" of Sunburst or Milwaukee County or as foster children. At the time of the accident that underlies this lawsuit, Milwaukee County had legal custody of one of the children. See secs. 48.345(1) and 48.34(4)(b), Stats. As we have seen, this child and the child whose legal custody was transferred to Wood County were placed at Sunburst.

"Legal custody" under the Children's Code is "a legal status created by the order of a court, which confers the right and duty to protect, train and discipline the child, and to provide food, shelter, legal services, education and ordinary medical and dental care, subject to the rights, duties and responsibilities of the guardian of the child and subject to any existing parental rights and responsibilities and the provisions of any court order."

Section 48.02(12), Stats. Since neither of the children involved in this case had guardians, and since their parents were determined to be unable to fulfill properly their parental responsibilities, transfer of the children's legal custody to their counties of residence effectively made the children wards of those counties.[1] *See Town of Lafayette v. City of Chippewa Falls,* 70 Wis. 2d 610, 619–620, 235 N.W.2d 435, 440–441 (1975) (patient-residents committed to a state hospital for the mentally infirm were wards of the state even though none were under formal guardianship). The child whose legal custody was transferred to Milwaukee County was thus a ward of Milwaukee County living at Sunburst and, accordingly, a named-insured under the policy.

As we have seen, Wood County was not an insured under the policy. Thus, the child whose legal custody was transferred to Wood County was a ward of that county and not a named-insured under the policy by virtue of that status. He also was not a named-insured because he resided at Sunburst.

Residential treatment centers licensed as child welfare agencies under section 48.60, Stats., provide "care and maintenance" to children whom they receive "with or without transfer of [the children's] legal custody."

---

[1] On October 18, 1985, the Director of the Milwaukee County Department of Social Services was appointed as a sixty-day temporary guardian for the child whose legal custody was transferred to Milwaukee County. This was five months after the child's legal custody was transferred to Milwaukee County on May 16, 1985. The child was represented at the juvenile court proceedings by an attorney. *See* 48.23(1)(b), Stats. The child whose legal custody was transferred to Wood County was under the age of twelve and was represented at the juvenile court proceedings by a guardian ad litem. *See* sec. 48.23(1)(b)2, Stats. A guardian ad litem is not a guardian. *See* secs. 48.02(8), 48.023, and 48.235(3), Stats.

Section 48.60(1), Stats.; *see also* sec. 48.61, Stats. Under chapter 880, Stats., a "ward" is a person "for whom a guardian has been appointed," sec. 880.01(10), Stats., and a "guardian" is someone "appointed by a court to have care, custody and control of the person of a minor or an incompetent," sec. 880.01(3), Stats. Similarly, under chapter 48, Stats., a "guardian" is a "person appointed by the court" who thereby "has the duty and authority to make important decisions in matters having a permanent effect on the life and development of the child and the duty to be concerned about the child's general welfare," sec. 48.023, Stats., including the "rights and responsibilities of legal custody except when legal custody has been vested in another person," sec. 48.023(4), Stats. Accordingly, a residential treatment center licensed as a child welfare agency under section 48.60 may, under certain circumstances, have a guardian/ward-like relationship with the children entrusted to their care. Here, however, the legal custody of both children was transferred to their respective counties of residence. As a result, both counties were vested with the legal "right and duty" to provide the children with needed care. *See* sec. 48.02(12), Stats. This, in my view, gave the counties the ultimate authority with respect to the care Sunburst provided to each child. I am thus unable to conclude from the appellate record that Sunburst acted in a guardian-like capacity with respect to either child. Similarly, I cannot conclude from this record that either child was Sunburst's "foster child." *A.G. v. Travelers Insurance Co.*, 112 Wis. 2d 18, 331 N.W.2d 643 (Ct. App. 1983), upon which the majority relies, does not support a contrary conclusion.

A "residential treatment center," such as Sunburst, is not a "foster home." *See* secs. 48.02(6) and 48.34(3)(c), (d), Stats. A foster home licensed pursuant

to the Children's Code "provides care and maintenance for no more than 4 children unless all children are siblings." Section 48.02(6).[2] *See also* sec. 48.62(1), Stats. The issue in *A.G.* was "whether a foster child placed in a foster home is a 'resident' of that household for insurance purposes." *Id.,* 112 Wis. 2d at 20, 331 N.W.2d at 644. A.G. was injured as the result of the alleged negligence of the foster parent's child. *Id.,* 112 Wis. 2d at 24, 331 N.W.2d at 646. He sued the foster parent's homeowner's insurance company, among others. *Ibid.* The insurance company argued that A.G. was a "resident" of the foster family's household and therefore within policy-coverage exclusion for such residents. *Ibid.* The court of appeals held "that, as a matter of law, in a court dispositional order of one year under sec. 48.34, Stats., to a family operated foster home of the type envisioned in sec. 48.62, Stats., the foster child shall be considered a resident of the household for insurance purposes." *Ibid.* It based its rationale on the special, close, family-type relationship between A.G. and his foster family. *Id.,* 112 Wis. 2d at 21-24, 331 N.W.2d at 645-646.[3] The court emphasized, however, it was "expressly . . . not deciding

---

[2]A group home provides "for the care and maintenance of 5 to 8 children." Section 48.02(7), Stats.

[3]The court cast its specific conclusions based on A.G.'s relationship with his foster family into a general rule of law for three reasons. First, it was consistent with an earlier case decided by the supreme court. *A.G.,* 112 Wis. 2d at 24-25, 331 N.W.2d at 646-647. Second, it "comport[ed] with the intended purpose of the 'resident of a household' exclusion." *Id.,* 112 Wis. 2d at 26, 331 N.W.2d at 647. Third, the court determined that it was "in the best interests of both the insurance industry and the insured to have some finality on the question of whether a foster child in a family operated foster home is a resident of the household." *Ibid.*

whether foster homes owned by the state or a county agency fall within the ambit of this case; nor . . . deciding whether group homes are of the same genre." *Id.,* 112 Wis. 2d at 25, 331 N.W.2d at 647. There is nothing in the appellate record here that permits us to conclude as a matter of law, on an appeal from summary judgment, that the relationship between either child and Sunburst was akin to the relationship between a foster child and a foster parent.

Insurance policies are contracts. Absent statutory mandate, no insurance company may be compelled to provide coverage beyond the scope of its policy. *See Martin,* 146 Wis. 2d at 776, 433 N.W.2d at 7. The majority's extension of named-insured coverage to the child whose legal custody was transferred to Wood County because it would place "an unnecessary burden" on those vested with responsibility under the Children's Code to formulate and enter appropriate dispositional orders for those children determined to be in need of protection and services, both usurps the legislative function and impermissibly rewrites the St. Paul policy.

## II.

Although I agree with the majority that the child whose legal custody was transferred to Milwaukee County is a named-insured under the St. Paul policy, albeit for different reasons, I disagree with the majority's conclusion that section 631.43(1), Stats., overrides the policy's $100,000 single limit in connection with that child's claim. The policy's language in this regard is unambiguous:

> If a single limit is shown, it is the most we'll pay for all damages resulting from bodily injury caused by any one accident. This limit applies no matter how

many covered autos or protected persons are involved or how many claims are made.

This contractual provision is not nullified by section 631.43(1), which, as relevant here, provides:

> When 2 or more policies promise to indemnify an insured against the same loss, no "other insurance" provisions of the policy may reduce the aggregate protection of the insured below the *lesser* of the actual insured loss suffered by the insured *or the total indemnification promised by the policies* if there were no "other insurance" provisions.

(Emphasis added.) The "single limit" clause in the St. Paul policy is not an "other insurance" provision; rather, as specifically permitted by section 631.43(1), "the total indemnification promised by the" St. Paul policy was $100,000 since, on the record before us, there is no evidence that Sunburst paid more than one premium for the uninsured-motorist coverage. There was thus but *one* coverage. A recent case decided by our court, *Krause v. Massachusetts Bay Ins. Co.*, 161 Wis. 2d 711, 468 N.W.2d 755 (Ct. App. 1991), illustrates this point.

*Krause* involved an attempt to stack underinsured-motorist coverage. Two automobiles were insured in a single policy issued by Massachusetts Bay Insurance Company. *Id.*, 161 Wis. 2d at 714, 468 N.W.2d at 756. Separate premiums were charged for separate underinsured-motorist coverages for each car. *Ibid.* The policy had a "limit of liability" clause similar to the "single limit" clause here:

> The limit of liability shown . . . for this coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:

166

1. Covered persons;

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

*Id.,* 161 Wis. 2d at 714–715, 468 N.W.2d at 756 (emphasis omitted). We held that Massachusetts Bay's "limit of liability" clause was an "other insurance" provision and thus violated section 631.43(1), Stats. *Id.,* 161 Wis. 2d at 717, 468 N.W.2d at 757–758; 161 Wis. 2d at 714, 468 N.W.2d at 756:

> The circuit court reasoned that Mass Bay's insurance contract should be construed as two policies because the insured plaintiffs were charged two separate premiums for coverage of their vehicles, and any attempt by Mass Bay to avoid aggregate coverage through its "Limit of Liability" clause runs afoul of Wisconsin's stacking statute, sec. 631.43(1), Stats. We agree and affirm.

Here, however, the appellate record indicates that only one uninsured-motorist premium was paid.[4] Since the "single limit" clause in the St. Paul insurance contract with Sunburst does not violate section 631.43(1), the clause should be enforced. *Cf. Mills v. Wisconsin Mut. Ins. Co.,* 145 Wis. 2d 472, 482–489, 427 N.W.2d 397, 401–404 (Ct. App. 1988) (neither section 631.43(1) nor public policy permits the stacking of liability or medical services coverages under two insurance policies even

---

[4]Although additional premiums were, of course, charged for each additional insured vehicle, there is nothing in the appellate record to indicate that additional *uninsured-motorist premiums* were collected. If that were the case, the "single limit" clause might very well violate section 631.43(1), Stats.

though separate premiums were collected in face of a contractual limitation on the insurance company's liability). I would affirm the judgment.[5]

[5]Significantly, all of the cases upon which the majority relies, directly or indirectly, involved situations where separate premiums were paid for each coverage sought to be stacked. Thus, *Tahtinen v. MSI Insurance Co.,* 122 Wis. 2d 158, 361 N.W.2d 673 (1985), held that section 631.43(1) "voids reducing clauses which prohibit stacking of multiple policy *coverages* issued by the same insurer to the same insured," *id.,* 122 Wis. 2d at 160, 361 N.W.2d at 675 (emphasis added), and *Welch v. State Farm Mutual Automobile Insurance Co.,* 122 Wis. 2d 172, 361 N.W.2d 680 (1985), held that a "drive other car" exclusion violated section 631.43(1) because it was an attempt to "prohibit the stacking of multiple policy *coverages* of uninsured-motorist protection," *id.,* 122 Wis. 2d at 173, 361 N.W.2d at 681 (emphasis added). *See also Nicholson v. Home Ins. Cos.,* 137 Wis. 2d 581, 590–594, 405 N.W.2d 327, 330–332 (1987) (A clause that reduced the amount of liability coverage afforded a passenger in an insured's automobile by the amount paid to that passenger under the policy's uninsured-motorist provision violated section 632.32(4)(a), Stats.); *Hulsey v. American Family Mut. Ins. Co.,* 142 Wis. 2d 639, 641, 648–649, 419 N.W.2d 288, 289, 292 (Ct. App. 1987) (An insured may stack the uninsured-motorist coverage of her father's policy and the uninsured-motorist coverage of her own policy.); *Burns v. Milwaukee Mut. Ins. Co.,* 121 Wis. 2d 574, 576–579, 360 N.W.2d 61, 63–64 (Ct. App. 1984) (An "other insurance" provision applicable to uninsured-motorist coverage violated section 631.43(1) even though the insurance for the two automobiles was issued in a single document where the insured "paid separate premiums for uninsured motorist [coverage] on each auto."). As noted in the main body of this opinion, *Mills,* which involved the attempt to stack liability and medical-services coverages and not uninsured-motorist coverage, specifically reaffirmed the right-to-contract

concept in the insurance context. *Id.,* 145 Wis. 2d at 485–486, 427 N.W.2d at 402–403.