(T.C. #89–CV–01834) Cameron J. CARRINGTON, f/k/a Cameron J. Cotton, by his Guardian ad Litem, Arthur B. Nathan, Plaintiff-Co-Appellant,

v.

ST. PAUL FIRE & MARINE INSURANCE COMPANY, a foreign corporation, Defendant-Respondent-Petitioner,

Wesley R. JARRELL and Jonathon A. Wollman, Defendants,

Dorthea EVANS, Defendant-Appellant.

Lori L. JARRELL, Plaintiff,

v.

ST. PAUL FIRE & MARINE INSURANCE COMPANY, Defendant-Respondent-Petitioner,

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a foreign corporation, Wesley R. Jarrell, Cameron J. Carrington, f/k/a Cameron J. Cotton and Jonathon A. Wollman, Defendants,

Dorthea EVANS, Defendant-Appellant.

Supreme Court

*No. 90–0834. Oral argument May 27, 1992.—Decided June 24, 1992.*

(Also reported in 485 N.W.2d 267.)

211

For the defendant-respondent-petitioner there were briefs by *Douglas J. Carroll* and *O'Neill, Schimmel, Quirk & Carroll, S.C.,* Milwaukee and oral argument by *Douglas J. Carroll.*

For the defendant-appellant there was a brief by *Ronald Bornstein* and *Robert Silverstein & Associates, S.C.,* Milwaukee and oral argument by *Mr. Bornstein.*

HEFFERNAN, CHIEF JUSTICE. This is a review of a published decision of the court of appeals, *Carrington v. St. Paul Fire & Marine Ins. Co.,* 164 Wis. 2d 148, 473 N.W.2d 591 (Ct. App. 1991), reversing a summary judgment of the circuit court for Milwaukee county, Victor Manian, Circuit Judge, which concluded that Dorothea Evans and Cameron J. Carrington (the children) were "occupancy insureds" rather than "named insureds" under an insurance policy issued to Sunburst Youth Homes, Inc. (Sunburst), by St. Paul Fire & Marine Ins. Co. (St. Paul), and therefore were unable to "stack" uninsured motorist coverage. The court of appeals held that the children were named insureds under the policy because they were "wards or foster children" of Sunburst, and that they were entitled to stack uninsured motorist coverage under the St. Paul policy despite the existence of a "single limit" provision in the policy. We agree, and affirm.

On April 27, 1986, a car owned by Sunburst and operated by Wesley R. Jarrell, a Sunburst employee, collided with a car owned and operated by Jonathan A. Wollman, an uninsured motorist. Carrington and Evans were injured in the accident. At the time, the children resided at Sunburst pursuant to orders of the children's division of the circuit court. The children had previously been determined to be children in need of protective services under sec. 48.13(10), Stats., and their custody was placed with the Department of Social Services of their respective counties of residence. The children sought to recover compensation for their injuries under the uninsured motorist coverage in St. Paul's comprehensive insurance policy issued to Sunburst.

The action presented the circuit court with two questions: (1) whether the children were "named insureds" or "occupancy insureds" under the policy; and (2) if they were named insureds, whether the "single limit" provision of the policy violated sec. 631.43(1), Stats., by illegally prohibiting stacking of uninsured motorist coverage.[1]

St. Paul issued a comprehensive insurance policy to Sunburst, which included automobile insurance. Under the heading "Who Is Protected Under This Agreement," the St. Paul policy provided in part:

> *Protected persons* are people and organizations protected under this agreement. Each is protected separately. However, the limits of coverage shown in the Coverage Summary are shared by all protected persons.

---

[1]In *Martin v. Milwaukee Mut. Ins. Co.,* 146 Wis. 2d 759, 433 N.W.2d 1 (1988), we held that only named insureds, and not occupancy insureds, could stack uninsured motorist coverages.

Here's a list of "protected persons" and certain limitations on their liability protection.

*You.*

*A member of your family.*

*A member of your family* is a person who is related to you by blood, marriage or adoption and lives in your home. A ward or foster child who lives with you is also considered to be a member of your family.

*Anyone else in a covered auto.* Anyone else while in a covered auto or a temporary substitute auto is protected.

The term "you" is defined in the policy as follows:

The words you, your and yours mean the insured named here:

Sunburst Inc. of Wisconsin

Sunburst Youth Homes, Inc.

Sunburst Care Facilities, Ltd.

Sunburst Foundation, Inc.

Neillsville, Wisconsin 54456

Which is a:

| | | | |
|---|---|---|---|
| x | corporation | ___ | individual |
| ___ | partnership | ___ | joint venture |
| ___ | other | ___ | condominium |

Finally, the policy contained a "single limit" provision which provided:

If a single limit is shown, it is the most we'll pay for all damages resulting from bodily injury caused by any one accident. This limit applies no matter how

many covered autos or protected persons are involved
or how many claims are made.

On the declarations page for uninsured and underinsured motorist protection, under the heading "Uninsured Limits of Coverage," the policy provided coverage for "$100,000 per accident."

On cross motions for summary judgment, the circuit court ruled that the children were only occupancy insureds, and that even if they were named insureds, the policy provided single limit uninsured motorist coverage of $100,000. St. Paul paid the $100,000 into the court and the parties stipulated to its distribution.[2]

On July 30, 1991, the court of appeals reversed the judgment of the circuit court. The court of appeals concluded that the children were named insureds under the policy because they both were "a ward or foster child"

[2]On April 3, 1990, the circuit court entered both an "Order Granting Motions Order for Judgment" and a document entitled "Final Judgments." Both Evans, on April 17, 1990, and Carrington, on May 14, 1990, filed a notice of appeal from the order granting St. Paul's motion for summary judgment rather than the actual judgment. St. Paul moved to dismiss the appeal pursuant to sec. 809.10(1), Stats., for lack of subject matter jurisdiction because the notices did not specify the judgment appealed from. On October 16, 1990, the court of appeals denied St. Paul's motion because it found the defects to be "inconsequential violations" of the rules of appellate procedure, and ordered amended notices of appeal filed. We agree with the court of appeals that the defect in the notice of appeal and notice of co-appeal was inconsequential. *See* sec. 807.07(1), Stats.; *State v. Louis,* 152 Wis. 2d 200, 202–03 n.1, 448 N.W.2d 244 (Ct. App. 1989), *aff'd,* 156 Wis. 2d 470, 457 N.W.2d 484 (1990), *cert. denied,* — U.S. —, 111 S. Ct. 1078 (1991); and *Northridge Bank v. Community Eye Care Center, Inc.,* 94 Wis. 2d 201, 202–03, 287 N.W.2d 810 (1980) ("The new rules of appellate procedure were not designed to be a trap for the unwary.").

living with Sunburst. *Carrington,* 164 Wis. 2d at 152–56. Next, the court of appeals determined that St. Paul's $100,000 single limit provision violated sec. 631.43(1), Stats., because it improperly prohibited stacking of uninsured motorist coverage for separate policies. Judge Fine dissented, concluding that while at least one child, Evans, was a named insured as a ward of Milwaukee county (which was an additional named insured under the St. Paul policy), the single limit provision did not violate sec. 631.43(1), because it was not shown that separate premiums for uninsured motorist coverage were collected for each covered vehicle. *Carrington,* 163 Wis. 2d at 160–69.

This case was decided on summary judgment, and there are no material facts in dispute. The construction of insurance contract provisions and statutes are questions of law which we review *de novo. Martin,* 146 Wis. 2d at 766.

The first issue we must decide is whether the children were named insureds (also referred to as "Class 1 insureds") or occupancy insureds ("Class 2 insureds") under the St. Paul policy. St. Paul argues that there can only be occupancy insureds under a commercial fleet policy where the only named insured is a corporation or government entity rather than a person. St. Paul cites a host of authority to support this position.[3] We agree

[3]*See Lumbermens Mut. Cas. Co. v. Martin,* 399 So. 2d 536 (Fl. Dist. Ct. App. 1981); *Sears v. Wilson,* 10 Kan. App. 2d 494, 704 P.2d 389 (1985); *Howell v. Harleysville Mut. Ins. Co.,* 305 Md. 435, 505 A.2d 109 (1986); *Lundgren v. Vigilant Ins. Co.* 391 N.W.2d 542 (Minn. Ct. App. 1986); *Linderer v. Royal Globe Ins. Co.,* 597 S.W.2d 656 (Mo. Ct. App. 1980); *Buckner v. Motor Vehicle Accident Indemnification Corp.,* 66 N.Y.2d 211, 495 N.Y.S.2d 952, 486 N.E.2d 810 (1985); *Cunningham v. Insurance*

with St. Paul on this point. However, under the express language of the policy, the children were in fact named insureds. As St. Paul concedes, a commercial fleet policy may include named insureds. *See, e.g., American Fire & Cas. Co. v. Sinz,* 487 So. 2d 340 (Fl. Ct. App. 1986).

In defining the term "member of your family," the St. Paul policy provides: "A ward or foster child who lives with you is also considered to be a member of your family." St. Paul argues that because the "you" referred to is an inanimate corporation, no reasonable person could conclude that it had family members or that any person could live "with" it. We disagree. With "Sunburst" inserted for "you," the policy reads: "A ward or foster child who lives with Sunburst is considered to be a member of Sunburst's family."

Because the insurer controls the language and scope of the policy, any ambiguity must be construed in favor of coverage. *Cardinal v. Leader National Ins. Co.,* 166 Wis. 2d 375, 382, 480 N.W.2d 1 (1992). "An ambiguity exists when the policy is reasonably susceptible to more than one construction from the viewpoint of a reasonable person of ordinary intelligence in the position of the insured." *Schroeder v. Blue Cross & Blue Shield United of Wisconsin,* 153 Wis. 2d 165, 174, 450 N.W.2d 470 (Ct. App. 1989). In this case, while it is reasonable to conclude that a corporation cannot have a "family," it is also reasonable to conclude that an insurance contract

*Co. of North America,* 213 Va. 72, 189 S.E.2d 832 (1972); *Thompson v. Grange Ins. Ass'n,* 34 Wash. App. 151, 660 P.2d 307 (1983); and *Continental Cas. Co. v. Darch,* 27 Wash. App. 726, 620 P.2d 1005 (1980). *See also* 2 *No Fault and Uninsured Motorist Automobile Insurance* § 24.10(2)(b) (M. Bender ed., 1992); and Alan I. Widiss, 1 *Uninsured and Underinsured Motorist Insurance* § 13.11(b) (1992).

may define the term "family member" such that an individual is a member of a corporate family for insurance purposes. "This court has recognized that the purchase of uninsured motorist coverage protects the policyholder and their relatives (*as defined in the policy*)." *Martin*, 164 Wis. 2d at 769 (emphasis added). Indeed, while it is true that a corporation cannot be related to a person by blood, marriage or adoption, it is equally true that a corporation is a "person" in the contemplation of the law, may own a home, sec. 180.0302(4), Stats., may be appointed as a legal guardian, sec. 880.35, Stats., and may have custody, physical placement or legal responsibility for wards, secs. 48.60 and 48.61, Stats. In this case, where Sunburst was in the business of providing residential care and treatment facilities to wards, it reasonably could interpret the policy language as protecting such wards.

St. Paul further contends that the children were neither wards nor foster children, or that if they were, they were wards of their respective counties and did not live with those counties. The children argue that under a plain reading of the policy and the term "ward," they were wards living with Sunburst. We agree with the children. The record establishes that Evans was a ward of Milwaukee county and that Carrington was a ward of Wood county. Both children were living with Sunburst pursuant to dispositional orders of the children's division of the circuit court. Sunburst is a residential treatment center licensed as a child welfare agency pursuant to sec. 48.60, Stats., which has the authority to "contract with any parent or guardian or other person for the supervision or care and maintenance of any child." Section 48.61(2), Stats. Regardless of whether the children were legally the wards of Sunburst, they were wards liv-

ing with Sunburst and consequently were named insureds under the policy.

On this point, we are also persuaded by the reasoning of the Court of Appeals of Michigan in *Hartman v. Insurance Co. of North America,* 106 Mich. App. 731, 308 N.W.2d 625 (1981). In that case, William Prince, a mentally incompetent adult, was committed to the care of the state of Michigan, which in turn sent him to live at a private group living facility, operated for profit and known as "Baumgarten Homes." While living at the home, Prince was riding a bicycle and was injured in an accident with a driver of a motor vehicle. The issue before the court was whether under Michigan's no-fault law Prince should receive compensation from the Baumgartens' insurer (INA) or the driver's insurer.

The court held that Prince should be compensated under the Baumgartens' insurance policy as a "relative" of the Baumgartens. The policy defined "relative" as "a person related to the Named Insured by blood, marriage or adoption (including a ward or foster child) who is a resident of the same household as the Named Insured." *Hartman,* 308 N.W.2d at 628. The court concluded that Prince was a "ward" as defined in the policy:

> It is obvious that the term "ward" as used in INA's policy should not be restricted in its definition to include only a person on behalf of whom a legal guardian has been appointed by a court of competent jurisdiction. Rather, a common and ordinary dictionary definition of "ward" offered by Webster's Third New International Dictionary (1965), p. 2575, is "a person . . . under the protection or tutelage of a person." It is therefore necessary to examine the factual context of the case at bar to determine whether Wil-

liam Prince was a "ward" of the Baumgartens as that word is used in common parlance.

*Id.* at 629. The court then examined the facts of the case, noting that the state placed Prince at the home to receive basic care and "to put him in an atmosphere where he would experience some of the attributes of living with other people in a less restricted setting and could experience as close a relationship to a family as was possible under the circumstances," and concluded that Prince was a ward of the Baumgartens. *Id.*

Additionally, the court stated:

> In accord with this conclusion is the fact that although INA's agent had actual knowledge at the time he sold the insurance policy to the Baumgartens that they were engaged in the business of caring for handicapped people, and although this knowledge is imputable to INA via the existing agency relationship, INA never undertook to clarify the terminology of its policy—including the term "ward"—notwithstanding its potential risk exposure due to the nature of the Baumgartens' business. Any ambiguity in the policy must therefore be strictly construed against INA.

*Id.* This case presents a nearly identical situation, and we draw the same conclusion. Evans and Carrington were placed with Sunburst to receive supervision or care and maintenance and were thus wards of Sunburst according to the common and ordinary meaning of that term. Moreover, it was well within St. Paul's power to clarify the term "ward" in a policy issued to a residential treatment center providing a home for wards and other children.

Having determined that the children were named or Class 1 insureds under St. Paul's policy, we must con-

sider whether they can "stack" the uninsured motorist coverage. Stacking refers to a situation where an insured attempts to collect reimbursement for the same loss under multiple policies. *See Tahtinen v. MSI Ins. Co.,* 122 Wis. 2d 158, 159 n.1, 361 N.W.2d 673 (1985). In this case, the children are attempting to stack the uninsured motorist coverage on each of Sunburst's sixteen covered automobiles.[4]

St. Paul argues that the children cannot stack because its single limit provision unambiguously provides for a total of $100,000 of coverage for any one accident. The children assert that because St. Paul collected separate premiums for each of the sixteen covered automobiles, it in effect issued sixteen separate policies, and thus the single limit provision is an "other insurance" provision which violates sec. 631.43(1), Stats. We agree with the children.

Section 631.43(1), Stats., provides in part:

> When 2 or more policies promise to indemnify an insured against the same loss, no "other insurance" provisions of the policy may reduce the aggregate protection of the insured below the lesser of the actual insured loss suffered by the insured or the total indemnification promised by the policies if there were no "other insurance" provisions.

St. Paul's single limit provision provides:

> If a single limit is shown, it is the most we'll pay for all damages resulting from bodily injury caused by any one accident. This limit applies no matter how

---

[4]The court of appeals stated that there were eighteen vehicles in Sunburst's fleet. *Carrington,* 164 Wis. 2d at 154. Because two of those vehicles were snowmobiles for which there properly was no uninsured motorist coverage, we will refer only to the sixteen automobiles covered at the time of the accident.

many covered autos or protected persons are involved or how many claims are made.

The single limit shown on the declarations page is "$100,000 per accident." St. Paul argues that because it issued only one policy, sec. 631.43(1), Stats., is inapplicable, and the single limit provision unambiguously mandates maximum coverage of $100,000 for all damages resulting from a single accident, regardless of the number of covered autos or protected persons involved. The children argue that St. Paul collected separate premiums for coverage on each vehicle and therefore actually issued sixteen separate policies.

Where an insured pays separate premiums, he or she receives separate and stackable uninsured motorist protections whether the coverage is provided in one or more than one policy.[5] A single limit provision in such a policy violates sec. 631.43(1), Stats., because it prohibits stacking of separate coverages. An insurer cannot do indirectly what it cannot do directly. Thus the question is whether Sunburst paid separate premiums for the uninsured motorist protection on each listed automobile. If it did, the single limit provision is nothing more than an "other insurance" provision and is void pursuant to sec. 631.43(1), Stats.

The majority of the court of appeals concluded that "[t]he policy lists each covered vehicle and separately

[5]*See Burns v. Milwaukee Mutual Ins. Co.,* 121 Wis. 2d 574, 578, 360 N.W.2d 61 (Ct. App. 1984); *Hulsey v. American Family Mutual Ins. Co.,* 142 Wis. 2d 639, 644–46, 419 N.W.2d 288 (Ct. App. 1987); *Mills v. Wisconsin Mutual Ins. Co.,* 145 Wis. 2d 472, 483, 427 N.W.2d 397 (Ct. App. 1988). *See generally* Janet Boeth Jones, Annotation, *Combining or "Stacking" Uninsured Motorist Coverages Provided in Single Policy Applicable to Different Vehicles of Individual Insured,* 23 ALR4th 12 (1983).

declares the premium rate for each." *Carrington,* 164 Wis. 2d at 154 n.8. Judge Fine, in dissent, concluded that "on the record before us, there is no evidence that Sunburst paid more than one premium for the uninsured-motorist coverage." *Id.* at 166 (Fine, J., dissenting). We agree with the majority that the record indicates that separate premiums were paid for each automobile.

While the policy is silent regarding whether Sunburst expressly paid a separate premium for uninsured motorist coverage on each vehicle, there is evidence that it did. The policy lists each automobile separately, indicates the level of coverage for each, and indicates by a checked box that each has both liability and uninsured motorist coverage. Thus the policy itself indicates that the uninsured motorist coverage attaches to each vehicle separately. The policy also indicates that additional premiums were paid for additional insured vehicles, and that premiums were returned for deleted vehicles.[6] It is reasonable for the insured to conclude that the additional premiums applied to uninsured motorist coverage, because in the schedule each additional car had a box marked "UM" for uninsured motorist coverage checked beside it.

We do not agree with Judge Fine's conclusion that the silence of the policy with respect to the premiums paid "indicates that only one uninsured-motorist premium was paid." *Carrington,* 164 Wis. 2d at 167 (Fine, J., dissenting). In the absence of an express statement in

---

[6]Specifically, the policy indicates payment of the following premiums: $928 for a 1986 Chevrolet Spectrum; $836 for a 1985 Dodge Van; $682 for a 1986 Dodge Omni (the automobile involved in the accident); $425 for a 1985 Volkswagen Golf Sedan; $2,181 for a 1985 IHC Bus; $345 for a 1983 Dodge 400; $364 for a 1986 Chevrolet Nova; and $91 for a 1985 Chevrolet Caprice.

the policy that a single premium is charged for uninsured motorist coverage for all covered autos, we hold that it is reasonable for a named insured to expect that the coverage is stackable. *See Allstate Ins. Co. v. Maglish,* 586 P.2d 313, 316 (Nev. 1978) ("[E]ven if Allstate had alleged and could prove that only one UM premium was paid, sound judicial policy favors determining an insured's rights from the face of the policy or documents which form part of the bargain. . . . [R]ecourse to records not accessible to an insured cannot be allowed to limit his rights.") In light of the strong policy in Wisconsin favoring uninsured motorist protection as a means to ensure that persons injured by uninsured motorists are in the same position that they would be if the motorist were insured, *St. Paul Mercury Ins. Co. v. Zastrow,* 166 Wis. 2d 423, 433, 480 N.W.2d 8 (1992), an insurer may not preclude stacking by failing to specify the premiums charged. Here, aside from the additional autos listed, there is no indication at all of the premium or premiums charged for automobile insurance.[7]

The touchstone of any coverage determination is the reasonable expectation of the insured. Under the circumstances of this case, where the policy indicated that separate premiums were charged for uninsured motorist coverage on each auto, we conclude that the named insureds reasonably believed that each auto was separately insured and that the coverages were stackable. Thus the single limit provision violates sec. 631.43(1), Stats., and is void.

---

[7]The policy merely indicates that the premium for the entire policy covering the period from January 1, 1986 to January 1, 1987, was $40,894.00. St. Paul does not assert that Sunburst paid only one premium for uninsured motorist coverage, but rather that the record does not show payment of separate premiums.

226

St. Paul also argues that public policy considerations preclude stacking of uninsured motorist coverages in commercial fleet policies. The rationale behind this argument is that allowing stacking will, in the circumstances of this case, expose St. Paul to a total risk of $1,600,000 based upon $100,000 coverage for sixteen automobiles, and that such a result is unreasonable, unconscionable and absurd. *See Linderer v. Royal Globe Ins. Co.,* 597 S.W.2d 656 (Mo. Ct. App. 1980). St. Paul asserts that no insured could reasonably expect such a level of coverage. This is in essence a "windfall" argument—that the insured should not receive the windfall of excessive coverage. We disagree. Rather, where the insurer collects multiple premiums it provides multiple coverages, regardless of the ultimate level of exposure. As St. Paul notes, the principle of freedom of contract applies to insurance contracts. If an insured wants excessive coverage, and an insurer agrees to provide it, there is nothing absurd about the level of coverage. It would be a windfall for the insurer and contrary to law if the insurer were allowed to collect additional premiums for uninsured motorist coverage and then deny the additional coverage.

Moreover, we note that numerous courts have allowed named insureds to stack uninsured motorist coverages in fleet policies. *See* Janet Boeth Jones, Annotation, *Combining or "Stacking" Uninsured Motorist Coverages Provided in Fleet Policy,* 25 ALR4th 896, 899–903 (1983). We agree with those courts that have held that a named insured in a fleet policy may stack uninsured motorist coverage where separate premiums are paid for coverage on each auto.

*By the Court.*—Decision affirmed.

ABRAHAMSON, J., concurs in the mandate.

STEINMETZ, J. *(dissenting).* I disagree with the majority opinion for three reasons. First, I disagree with the majority's conclusion that an inanimate corporation can have family members or have a person live "with" it. Sunburst was in the business of providing residential care and treatment facilities to wards. Wards, however, do not qualify as members of a family because a person cannot live with a corporation as a family member even as a means to establish coverage.

My second reason for opposing the majority opinion is that the majority's decision fails to consider the effect its decision will have on fleet policies. Although the policy in the present case involves multiple vehicles owned by the same owner, it does resemble a fleet policy and therefore the majority's decision may have an effect on such policies.

Finally, I disagree with the majority because it concludes that "because St. Paul collected separate premiums for each of the sixteen covered automobiles, it in effect issued sixteen separate policies, and thus the single limit provision is an 'other insurance' provision which violates sec. 631.43(1), Stats." Majority op. at 223. There was actually only one policy issued by the insurance company. I do not believe that the legislature intended to apply sec. 631.43(1) to this kind of policy and therefore the statute is inapplicable to the present case.

For the aforementioned reasons, I dissent.