State of Wisconsin, Plaintiff-Respondent,
v.
Gregory D. Jens, Defendant-Appellant.
No. 2005AP2144.
Court of Appeals of Wisconsin, District I.
October 24, 2006.
Before Wedemeyer, P.J., Fine and Kessler, JJ.
KESSLER, J.
¶1 Gregory Jens appeals pro se from an order denying his WIS. STAT. § 974.06 (2003-04)[1] motion for postconviction relief and an order denying his motion for reconsideration and clarification.[2] Jens presents two arguments: (1) that he should be allowed to withdraw his guilty plea as it was not knowingly, voluntarily or intelligently made; and (2) that he was denied effective assistance of counsel. While we conclude that the issues raised in Jens's motion are procedurally barred by the plain language of § 974.06 and by State v. Escalona-Naranjo, 185 Wis. 2d 168, 517 N.W.2d 157 (1994), and State v. Lo, 2003 WI 107, 264 Wis. 2d 1, 665 N.W.2d 756, we further conclude that, even if barred, Jens has failed to demonstrate either that his guilty plea was not knowing, voluntary or intelligent or that he received ineffective assistance of counsel. Therefore, we affirm the orders.

Background
¶2 The facts surrounding Jens's conviction are discussed in our decision on Jens's appeal of his judgments following his guilty pleas to first-degree sexual assault by use of a dangerous weapon, false imprisonment, first-degree recklessly endangering safety and battery and from an order denying his motion for postconviction relief, State v. Jens, No. 03-3153-CR, unpublished slip op. (WI App Jan. 25, 2005) (Jens I), and need not be repeated in detail here. Those facts specifically related to the issues Jens is raising in this appeal are as follows: During the pendency of Jens's case, both the first and second attorneys appointed to represent Jens were permitted to withdraw after indicating that their attorney-client relationship with Jens had deteriorated. Jens agreed to both withdrawals and a third attorney was appointed. On Jens's original trial date in July 2002, his attorney requested a competency evaluation because Jens was distraught over incidents that had taken place in the jail the night before. The trial court granted the motion and appointed an evaluator who found Jens competent; at the hearing regarding his competency, both Jens and his attorney agreed on the record that he was competent. Preceding his December 2002 trial, Jens sent a letter to the trial court indicating that his counsel was not filing the motions which Jens wanted filed, and noting that Jens had not been allowed to view the videotape taken at the Speedway store that the victim, Ms. Klaffka, had run into after her assault or the audiotape of a West Allis police department conversation with Jens's sister. Jens requested that the trial court allow him to represent himself. On the first morning of trial, Jens renewed his request to represent himself with his current attorney appearing merely as "standby counsel." The trial court conducted a lengthy colloquy and denied Jens's request, finding that Jens's anger made him incompetent to represent himself.
¶3 Jens's counsel continued to represent him during the proceedings, the trial was commenced, and the State began presenting its case. Later in the morning of the second day of trial, during the State's case-in-chief, the trial court conducted a hearing outside the jury's presence to discuss Jens's complaint that he was not allowed to cross-examine the witnesses himself. Jens was unhappy with his counsel's questioning of the store clerk who called the police when Ms. Klaffka ran into the store naked. The clerk had testified that when Ms. Klaffka was in the store's office, she had looked at the video surveillance monitors and said, "He's here, he's here; there he is, there he is." The clerk testified that she did not see the person on the video monitor that Ms. Klaffka may have been referring to, and upon Jens's question, through his counsel, if the clerk remembered seeing Jens in the store, the clerk testified. "I can't say. I really don't remember whether I saw him or not."
¶4 Jens was also upset about the testimony of Cindy Kissel and Officer Kurtz. Both individuals had testified to the excited utterances made by Ms. Klaffka. Specifically, Ms. Kissel testified that after being notified by police that Ms. Klaffka had been taken to the hospital, Ms. Kissel had gone to the hospital to be with her. During her conversations with Ms. Klaffka at the hospital, Ms. Kissel testified as to what injuries she saw and what Ms. Klaffka told her about the incident.[3] Officer Kurtz, who first spoke with Ms. Klaffka at the store, and also stayed with Ms. Klaffka for several hours at the hospital, testified that Ms. Klaffka told him both at the Speedway store and at the hospital that it was her boyfriend, Jens, who had assaulted her.
¶5 After discussing the matter for several minutes, Jens informed the trial court that he wanted to plead guilty because he believed that the trial court was not giving him a fair trial. The trial court told Jens that this was not a good reason to plead guilty and that it would not accept a guilty plea based on that reason. At the close of this discussion, and as the trial court was about to take a break, Jens again informed the trial court that he wanted to plead guilty. Jens stated, "Your Honor, the District Attorney has offered me a deal of eight years. At this point I can see no other remedy for this situation except for me to plead guilty." The trial court suggested that Jens discuss the matter with his attorney before making the decision to change his plea and gave Jens and his attorney time to discuss the matter, together and with the State.
¶6 When court resumed, counsel for Jens told the trial court that the parties had reached an agreement. Ultimately, Jens agreed to plead guilty to three of the five felony counts and to the misdemeanor battery charge. The trial court engaged in a detailed plea colloquy with Jens. In the following exchange during his plea colloquy, Jens admitted that the statements made by the State's witness, Ms. Kissel, were true:
JENS'S COUNSEL: [H]e just told me specifically that [Ms.] Kissel's statement yesterday was substantially true and correct.
THE COURT: Mr. Jens, do you agree with what [counsel] just told me?
JENS: Yes, I agree with the excited utterance of [Ms.] Klaffka that was made to [Ms.] Kissel.
The trial court ultimately accepted his pleas and found him guilty.
¶7 The trial court sentenced Jens to eight years of initial confinement and ten years of extended supervision for the first-degree sexual assault, concurrent sentences of two years' initial confinement and two years' extended supervision on the other two felonies, and nine months' confinement for the misdemeanor. All sentences ran consecutively to any sentences he was already serving.
¶8 Jens filed a notice of intent to pursue postconviction relief and postconviction counsel was appointed. Counsel filed a motion for postconviction relief asking that Jens be allowed to withdraw his pleas based on ineffective assistance of trial counsel. Subsequent to this filing, Jens wrote to the trial court about his unhappiness with postconviction counsel. Postconviction counsel moved to withdraw. After receiving an order from the trial court which, in pertinent part, informed Jens that the Public Defender's Office had indicated that it would not appoint successor appellate counsel, Jens responded that he did not want to fire his attorney and the trial court denied postconviction counsel's motion to withdraw.
¶9 The trial court, by written order, denied Jens's motion to withdraw his pleas and Jens appealed. This court affirmed the trial court's decision in Jens I. Jens petitioned the Wisconsin Supreme Court for review, but his petition was denied. On June 17, 2005, Jens filed this WIS. STAT. § 974.06 motion for postconviction relief, asking the trial court to allow him to withdraw his guilty pleas because they were not knowingly, voluntarily and intelligently made and that this was so because Jens received ineffective assistance of counsel. Jens alleges, as part of his ineffective assistance of counsel claim, that had counsel "investigated the state's witnesses[, counsel] would have uncovered" the following: Ms. Kissel's inconsistent testimony regarding when she arrived at the hospital; Ms. Klaffka's numerous lies to police; Mr. McGee, a State informant planted at the jail to get access to Jens's legal materials; that Ms. Klaffka was protecting a known criminal, Donald Willis; and that testimony of store clerks which would have exonerated him. The trial court denied Jens's § 974.06 motion, and also denied Jens's motion for reconsideration and clarification. This appeal followed.

DISCUSSION
¶10 In his brief-in-chief and his reply brief, Jens argues two issues: (1) that his plea was not knowingly, voluntarily and intelligently made; and (2) that he was denied effective assistance of counsel. Jens also asserts that he is incorporating by reference those issues which he raised in his June 17, 2005 motion for postconviction relief and his July 15, 2005 motion for reconsideration. We do not resolve issues not argued in the briefs filed in this appeal; accordingly, we limit our review to the two issues Jens addresses in his briefs. See State v. Flynn, 190 Wis. 2d 31, 58, 527 N.W.2d 343 (Ct. App. 1994).
¶11 In his first postconviction motion, Jens argued, among other issues, that he "should be allowed to withdraw his pleas based on ineffective assistance of trial counsel." In this court's decision on Jens's motion, i.e., Jens I, we rejected Jens's argument and found that Jens's guilty plea was knowingly, voluntarily and intelligently made and that Jens's trial counsel's assistance was not ineffective. Jens I, ¶¶18, 21. Jens is, therefore, barred from re-litigating these issues under State v. Escalona-Naranjo. However, if Jens can demonstrate to the trial court that ineffective assistance of counsel was the reason for the claims in his present motion not having been raised in his previous postconviction motion, this bar can be overcome. State ex rel. Rothering v. McCaughtry, 205 Wis. 2d 675, 682, 556 N.W.2d 136 (Ct. App. 1996).
¶12 After sentencing, a guilty plea will not be overturned unless there is a finding of a manifest injustice. State v. Booth, 142 Wis. 2d 232, 235, 418 N.W.2d 20 (Ct. App. 1987). "The withdrawal of a guilty plea is not a 'right,' but is addressed to the sound discretion of the trial court and will be reversed only for an [erroneous exercise] of that discretion." Id. at 237. A defendant seeking to withdraw a guilty plea after sentencing must show, by clear and convincing evidence, that a manifest injustice would result if the motion to withdraw is denied. State v. Bentley, 201 Wis. 2d 303, 311, 548 N.W.2d 50 (1996). The manifest injustice test is satisfied by a showing that the defendant received ineffective assistance of counsel. Id. A defendant claiming ineffective assistance of counsel must allege facts showing "'that there is a reasonable probability that, but for the counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" Id. at 312 (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). In order to show that a failure to investigate was prejudicial, a defendant must show both what the investigation would have revealed and how it would have altered the outcome of the proceedings. See Flynn, 190 Wis. 2d at 48.

Jens's guilty pleas were made knowingly, voluntarily and intelligently
¶13 Jens's first argument is that his guilty plea was not made knowingly, voluntarily or intelligently. In support of this contention, he advances the following arguments: (1) Ms. Kissel's testimony was false; (2) the State acted improperly in (a) coaching Ms. Kissel; and (b) withholding exculpatory evidence; (3) that DNA proves another man was involved in the battery and sexual assault because Jens is not the father of the child born to Ms. Klaffka following the incident; and (4) that under Brady v. Maryland, 373 U.S. 83, 87 (1963), (a) the trial court had improperly exercised its discretion when it found that Jens had been allowed access to view the Speedway videotape and listen to the audiotapes of telephone conversations between himself and Ms. Klaffka; and (b) that the State had withheld exculpatory evidence when it did not provide Ms. Kissel's arrest record to Jens.
¶14 Jens rests his contention that Ms. Kissel's testimony must be false because she was inexact in her testimony as to the time she arrived at the hospital and the hospital records first record her presence in Ms. Klaffka's room sometime after Ms. Kissel testified that she arrived at the hospital. He also cites a discrepancy between Ms. Kissel's testimony and the testimony of Officer Kurtz regarding the perpetrator's urination on the victim during the assault. The trial court found Ms. Kissel's testimony credible. Additionally, during his plea colloquy, Jens specifically acknowledged that Ms. Kissel's testimony regarding the excited utterances of Ms. Klaffka was true. Accordingly, his argument now that that same testimony led him to unknowingly, involuntarily and unintelligently plead guilty is unsupported by the record and we reject it.
¶15 Jens next contends that because the State acted improperly before and during his trial, this court should allow him to withdraw his guilty plea. Jens cites to two actions by the State to support his contention: (1) that the State coached Ms. Kissel in her testimony; and (2) that it withheld arrest records of some of the witnesses and the victim. Jens provides no evidence to support his claim that the State coached Ms. Kissel and we, therefore, reject this claim. See Bentley, 201 Wis. 2d at 313 (A postconviction motion cannot rely on conclusory allegations, but must state ultimate facts sufficient to sustain a complaint against a demurrer.). As to Jens's second claim that the State failed to provide certain arrest records, Jens has failed to show how that information is exculpatory, relevant to the issues at trial or how it could have been properly used at trial. We reject Jens's second contention.
¶16 Third, Jens contends that because DNA testing has shown that Jens is not the father of Ms. Klaffka's child, who was born after the assault, another man was involved with the victim (an alternative perpetrator). Jens also argues that no urine sample was taken from Ms. Klaffka's body, therefore, there was no proof that she was ever urinated on by her assailant. However, Ms. Klaffka had also told Officer Kurtz that she had missed her period, and was uncertain as to whether she may have been pregnant at the time of the assault. Ms. Klaffka's pregnancy with a different man's child supports her statements to Officer Kurtz and her statements to Ms. Kissel that Jens began the assault on her because he believed that she had been with another man. Also, because Jens admitted that Ms. Kissel's statements regarding his role in the assault were true, we find that Jens's contentions that (1) the child is not his; (2) no evidence of male urine was taken from Ms. Klaffka's body; and (3) he was unaware of the paternity of Ms. Klaffka's child or the fact of another male in Ms. Klaffka's life, to be unsupportive of his claim that he did not knowingly, voluntarily and intelligently plead guilty in this case. Consequently, we reject Jens's contentions that his not having this DNA evidence available at the time of his plea was prejudicial.
¶17 Finally, Jens contends that the State improperly suppressed evidence and that the trial court improperly exercised its discretion when it decided that Jens had been given enough time to review the videotape and audiotapes, as well as the State's assertion during the trial that Ms. Kissel had not been arrested. Jens relies on Brady in support of this contention. Under Brady, the United States Supreme Court held that under the Fourteenth Amendment to the United States Constitution, the State's suppression of evidence favorable to an accused violates due process where the evidence is material either to guilt or to punishment. Brady, 373 U.S at 87. Evidence is favorable to an accused, when, "if disclosed and used effectively, it may make the difference between conviction and acquittal." United States v. Bagley, 473 U.S. 667, 676 (1985). Evidence that is favorable to the accused encompasses both exculpatory and impeachment evidence. Strickler v. Greene, 527 U.S. 263, 280 (1999). The "individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." Kyles v. Whitley, 514 U.S. 419, 437 (1995).
¶18 There are three prerequisites for a Brady violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued. Strickler, 527 U.S. at 281-82. "'Prejudice' ... encompasses the materiality requirement of Brady so that the defendant is not prejudiced unless 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" State v. Harris, 2004 WI 64, ¶15, 272 Wis. 2d 80, 680 N.W.2d 737 (citation omitted). To determine prejudice:
"[T]he reviewing court may consider directly any adverse effect that the prosecutor's failure to respond might have had on the preparation or presentation of the defendant's case. The reviewing court should assess the possibility that such effect might have occurred in light of the totality of the circumstances and with an awareness of the difficulty of reconstructing in a post-trial proceeding the course that the defense and the trial would have taken had the defense not been misled by the prosecutor's incomplete response."
Id., ¶14 (citation omitted).
¶19 Jens's reliance on Brady is misplaced. Jens was permitted an opportunity to view the videotape and listen to the audiotapes. The record demonstrates that access to the tapes was given to both Jens's attorney and to Jens himself. The prosecution's duty to provide exculpatory evidence to the defense is satisfied if it is provided to the defendant's attorney. WIS. STAT. § 971.23(1) ("the districtattorney shall ... disclose to the defendant or his or her attorney" (emphasis added)); Nelson v. State, 59 Wis. 2d 474, 479, 208 N.W.2d 410 (1973) ("The state has the affirmative duty to disclose to the defendant or his counsel any material or information within its possession or control which tends to negate the guilt of the defendant...." (emphasis added)). However, the State did make the tapes available to Jens in the courthouse; Jens refused to view or listen to them because he did not like the inability of his attorney to be present when he listened to the tapes and his inability to take notes because of the need to keep him shackled in the less secure room. Jens had the opportunity and specifically rejected it. He cannot now argue that the State withheld evidence which it specifically made available to him and which he refused to view or listen to.
¶20 Jens also cannot show how he was prejudiced by the State's failure to produce the arrest record of Ms. Kissel. As can be seen from the record, after Jens asked whether Ms. Kissel had been arrested, the State went back to its table and inquired of the West Allis police detective present there if Ms. Kissel had been arrested. The detective originally indicated no. However, the State held a subsequent conversation with the detective and discovered that Ms. Kissel had been arrested for domestic violence (no further action was taken), had received tickets for retail theft and passing a worthless check, and had one conviction for cocaine possession. The trial court then inquired whether the State had any objection to the court informing the jury that Ms. Kissel had one criminal conviction. The State had none. Because the State made an inquiry, and provided the results of that inquiry to the defense, it did not fail to produce any potential exculpatory or impeachment evidence regarding Ms. Kissel's conviction record. Only convictions, not mere arrests, are admissible for impeachment purposes, State v. Cathey, 32 Wis. 2d 79, 89, 145 N.W.2d 100 (1966), so withholding an arrest record could not be a Brady violation under the facts in this case. The trial court was prepared to inform the jury of Ms. Kissel's one criminal conviction. Accordingly, we reject Jens's contention that the State improperly withheld exculpatory evidence regarding the arrest or conviction record of Ms. Kissel, or that the trial court improperly exercised its discretion in determining that Jens had had an opportunity to view the videotape or listen to the audiotapes. Jens suffered no prejudice under Brady.
¶21 Jens's newly discovered evidence claims relate solely to the credibility or impeachment of witnesses at his trial. Once Jens decided to plead guilty and terminate the trial proceedings, his right to confront and cross-examine witnesses was waived. Jens acknowledged this both in his reading and signing of the plea questionnaire/waiver of rights form and in his answers to the trial court's inquiries during the plea colloquy. See State v. Moederndorfer, 141 Wis. 2d 823, 827-28, 416 N.W.2d 627 (Ct. App. 1987) (a completed plea questionnaire and waiver of rights form is competent evidence of a knowing, voluntary and intelligent plea); WIS. STAT. § 971.08.

Jens received no ineffective assistance of counsel
¶22 Jens's second challenge to the adequacy of his plea is to claim that he was denied effective assistance of counsel. Ineffective assistance of counsel can give rise to a finding of manifest injustice and allow for the withdrawal of a guilty plea. Bentley, 201 Wis. 2d at 311. The United States Supreme Court has set forth the two-part test for determining ineffective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 687 (1984). Under Strickland, a defendant must prove both that counsel's performance was deficient and that the deficient performance was prejudicial to the defendant. Id., 466 U.S. at 687; State v. Pitsch, 124 Wis. 2d 628, 633, 369 N.W.2d 711 (1985). The defendant must prove both in order to be entitled to relief; accordingly, if the performance was not prejudicial, there is no need to find that it was deficient. Strickland, 466 U.S. at 697; State v. Johnson, 153 Wis. 2d 121, 127, 449 N.W.2d 845 (1990). To show prejudice, the defendant must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.
¶23 Performance is deficient if it falls outside the range of professionally competent representation. See Pitsch, 124 Wis. 2d at 636-37. We measure performance by the objective standard of what a reasonably prudent attorney would do in similar circumstances. See id.; Strickland, 466 U.S. at 668. We indulge in a strong presumption that counsel acted reasonably within professional norms. Pitsch, 124 Wis. 2d at 637. To prove prejudice, the defendant must show that counsel's errors were so serious that the defendant was deprived of a fair and reliable outcome. See Strickland, 466 U.S. at 687. The court reviews the attorney's performance with great deference and the burden is placed on the defendant to overcome the strong presumption that counsel acted reasonably within professional norms. Johnson, 153 Wis. 2d at 127. Generally, when a defendant accepts counsel, the defendant delegates to counsel the tactical decisions an attorney must make during a trial. State v. Brunette, 220 Wis. 2d 431, 443, 583 N.W.2d 174 (Ct. App. 1998) (citation omitted).
¶24 A claim of ineffective assistance of counsel presents a mixed question of fact and law. State v. O'Brien, 223 Wis. 2d 303, 324, 588 N.W.2d 8 (1999). Upon appellate review, we will affirm the trial court's findings of historical fact concerning counsel's performance unless those findings are clearly erroneous. Id. at 324-25. However, the ultimate question of ineffective assistance is one of law, subject to independent review. Id. at 325.
¶25 Jens cites numerous failings by his counsel to support his ineffective assistance of counsel contention. First, he contends that had counsel "investigated the state's witnesses [counsel] would have uncovered" (1) Ms. Kissel's inconsistent testimony regarding when she arrived at the hospital; (2) Ms. Klaffka's numerous lies to police; (3) that a Mr. McGee was a State informant planted at the jail to get access to Jens's legal materials; and (4) that a Donald Willis was a criminal and that Ms. Klaffka liked to protect him. Jens notes that this information was unknown to him at the time he pled guilty. However, Jens made many of these same arguments either at trial or in his earlier motion for postconviction relief. First, as to Ms. Kissel's testimony regarding the time she arrived at the hospital, Jens brought this to the court's attention at trial and the trial court found that Ms. Kissel's testimony was credible. Jens also discussed Ms. Klaffka's character and previous lies in his prior post-conviction motion, which was denied. As to Mr. McGee, Jens claims that this individual was somehow used by jail staff to obtain Jens's legal materials. However, it was undisputed at trial that the State, through Ms. Falk, the assistant district attorney, ordered Jens's cell searched after learning that Jens and Ms. Klaffka were exchanging correspondence which may have been evidence of additional crimes. Jens now also alleges that his counsel should have found that Ms. Klaffka was protecting a criminal, Donald Willis, and that this information would assist in impeaching Ms. Klaffka's testimony. However, because Jens pled guilty before Ms. Klaffka had an opportunity to be called to testify, no impeachment evidence was considered or ruled upon by the trial court. Because Jens either adds no new evidence in this motion in support of these claims or failed to demonstrate how any newly discovered impeachment evidence would have affected his decision to plead guilty and admit the truth of the testimony presented against him, we affirm the trial court's denial of Jens's motion to withdraw his guilty pleas based on ineffective assistance of counsel on these bases.
¶26 Jens also argues that Ms. Klaffka's incriminating remarks against him to Officer Kurtz and Ms. Kissel were inadmissible under the hearsay rules, and counsel's failure to object to their admission was ineffective assistance of counsel. However, Jens's counsel, on two separate occasions during Ms. Kissel's testimony and also once during Officer Kurtz's testimony, objected that the statements were not covered under the excited utterance exception to the hearsay rule. The trial court ruled that these statements did fall under the excited utterance exception to the hearsay rule. Accordingly, we reject Jens's argument that he was prejudiced by any failure by his counsel to object to their admission and therefore, his contentions do not constitute ineffective assistance of counsel.
¶27 Under Crawford v. Washington, 541 U.S.36 (2004), which was decided during the pendency of Jens' direct appeal in this case, a trial court violates a defendant's right to confrontation if it admits into evidence out-of-court statements made by a witness who does not testify at the trial, if those statements are "testimonial" and if the defendant has not had "a prior opportunity" to cross-examine the declarant. Id., 541 U.S. at 68; see also State v. Rodriguez, 2006 WI App 163, ¶12, ___ Wis. 2d ___, ___ N.W.2d ___. In this case, however, Jens never argued in his direct appeal against the statements of Ms. Klaffka to which Ms. Kissel or Officer Kurtz testified. Additionally, Jens specifically admitted in open court, during his plea colloquy, that Ms. Klaffka's excited utterances as testified to by Ms. Kissel were true. Finally, the State, if the trial had continued, was prepared to provide to the jury the audiotapes of telephone conversations between Jens and Ms. Klaffka wherein Jens discussed ways for Ms. Klaffka to avoid subpoena and not testify at trial, or alternatively, change her testimony. By attempting improperly to influence the testimony of Ms. Klaffka, Jens engaged in wrongdoing which forfeited any right he might have had to object to her failure to testify. See Crawford, 541 U.S. at 62 ("the rule of forfeiture by wrongdoing (which we accept) extinguishes confrontation claims'); see also Davis v. Washington, 126 S. Ct. 2266, 2280 (2006) ("We reiterate what we said in Crawford. . . . That is, one who obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation."). Consequently, under both Escalona and Crawford, Jens has waived the right to challenge Ms. Klaffka's statements as reported by Ms. Kissel and Officer Kurtz.
¶28 Jens then complains that it was an "unfair trial" because he was not allowed to view the Speedway videotape, that his second trial counsel concealed a witness's statement from him regarding an excited utterance made by Ms. Klaffka in the Speedway store, and that none of his three attorneys was willing to sit down with him to review the Speedway videotape or excited utterance evidence prior to trial. He claims this prejudiced him because these witnesses testified that Ms. Klaffka looked at the video monitor and said she saw her assailant. Jens says this would prove that he was not the perpetrator. However, Jens was given the opportunity to view the videotape himself and he declined to do so. Jens then chose to end the trial in the middle of the State's case by pleading guilty and admitting that the excited utterance testimony presented by Ms. Kissel was true. As such, he cannot now argue that he was prejudiced by any alleged failure by his counsel to jointly view the videotape with him or to discuss potential excited utterance testimony prior to trial.
¶29 Jens then argues that counsel never objected to the trial court's holding regarding a waiver of Jens's speedy trial request. This is incorrect. The record shows that both the State and defense counsel did discuss this with the trial court at both the July 9, 2002 trial date and on the first day of trial on December 4, 2002. On July 9, after conferring with Jens, his counsel specifically noted on the record that Jens was not waiving his right to a speedy trial under WIS. STAT. § 971.11(7). Because a determination of competency was requested by the defense on that day, the trial court, the Honorable M. Joseph Donald, tolled the speedy trial request pending determination of whether Jens was determined to be competent to stand trial. On December 4, 2002, the trial court, the Honorable Richard Sankovitz presiding, upheld the tolling of the speedy trial request and noted that Jens's trial was within 120 days of August 13, 2002, when he was found competent to stand trial. However, Jens waived any lack of speedy trial objection he may have had when he pled guilty. We affirm the trial court's denial of this argument.
¶30 The trial court found that "there is no showing in this record that counsel's actions rendered his pleas inadequate" and quoted our opinion in Jens I that "Jens fails to explain how his trial counsel's alleged ineffective [performance] had any effect on the knowing and voluntary nature of his plea. Jens has not proven, by clear and convincing evidence, that a manifest injustice would result if the withdrawal were not permitted." See Booth, 142 Wis. 2d at 237. We agree with the trial court that Jens has again failed to demonstrate, by clear and convincing evidence, how any failure by his trial counsel to inform him of the statements of the Speedway store witness prior to trial, or to view the Speedway videotape or listen to the audiotapes with him prior to trial, were prejudicial to the ultimate outcome of his casehis guilty plea; therefore, we affirm the trial court's decision.

CONCLUSION
¶31 The issues raised in Jens's WIS. STAT. § 974.06 motion are procedurally barred pursuant to § 974.06(4), Escalona-Naranjo and Lo. Additionally, Jens's arguments fail on their merits. Accordingly, we affirm the trial court's orders denying Jens's motion.
By the Court.Orders affirmed.
¶32 FINE, J. (concurring).
For the reason set out in the first sentence of Paragraph 31 of the Majority Opinion, I agree that we should affirm the trial court's denial of Gregory D. Jens's WIS. STAT. § 974.06 postconviction motion and motion for reconsideration and clarification.
NOTES
[1] All references to the Wisconsin Statutes are to the 2003-04 version unless otherwise noted.
[2] In his notice of appeal, Jens states that he is appealing his original judgment of conviction, the denial of his Motion for Wis. Stat. § 974.06 post-conviction relief, order dated October 22, 2003 and the denial of his Motion for Reconsideration entered on December 5, 2002. Because his notice of appeal was timely filed following the June 24, 2005 order denying his June 17, 2005 Motion for Post-Conviction Relief and the July 22, 2005 order denying his Motion for Reconsideration and Clarification, this court has appellate jurisdiction over his appeal of the June and July 2005 orders. See Carrington v. St. Paul Fire & Marine Ins. Co., 169 Wis. 2d 211, 217 n.2, 485 N.W.2d 267 (1992) (The failure of the notice of appeal to correctly identify the appealable document is not fatal to appellate jurisdiction.).
[3] Ms. Kissel specifically testified:

STATE: Did she explain to you how she got the injuries that you saw when you walked into her hospital room?
MS. KISSEL: She said that her and her boyfriend, her and Greg had got into a fight.
STATE: And when she said Greg, who did you understand that to be?
MS. KISSEL: Her boyfriend Gregory Jens.
....
STATE: Did she tell you what happened during the fight?
MS. KISSEL: She said that they had got into an argument when they went back home, and he just kept hitting her and hitting her and wouldn't stop.
STATE: What else did she say happened?
MS. KISSEL: She had said that he was  he just kept hitting her and hitting her. That he had tied her to him. That he was waving a knife around by her, that he peed on her. And then he poured alcohol down her throat.
STATE: Did she describe to you whether he had done any choking of her?
....
MS. KISSEL: She said that he had his hand around her throat and would not let go.
STATE: Did she describe any sexual things that happened?
....
MS. KISSEL: She said that after he had got done beating her that he forcefully had sex with her.